17-CV-3827 (SJ)(SJB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RICARDO BENITEZ,

Plaintiff,

-against-

THE CITY OF NEW YORK, RAUL LOPEZ, FRANK
LIBRETTO, SERGEANT STAMM, AND TINA
GRILLO,

Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION SEEKING TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED.R.CIV. PRO. 12(b)(6)

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Michael K. Gertzer*
*Tel:  (212) 356-2654*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ........................................................................................ 1

STANDARD OF REVIEW ........................................................................................ 5

ARGUMENT

      POINT I

           PLAINTIFF'S DENIAL OF A FAIR TRIAL
           CLAIM MUST BE DISMISSED BECAUSE
           PLAINTIFF HAS NOT PLEAD THAT ANY
           "FALSE" EVIDENCE CAUSED A VIOLATION
           OF HIS CONSTITUTIONAL RIGHTS ................................................. 6

           A.  Photo Array and Lineup.................................................... 6

           B.  Lopez DD5...................................................................... 9

      POINT II

           PLAINTIFF'S CLAIM FOR MALICIOUS
           PROSECUTION SHOULD BE DISMISSED
           BECAUSE PLAINTIFF CANNOT REBUT THE
           PRESUMPTION THAT PROBABLE CAUSE
           EXISTED AND BECAUSE PLAINTIFF
           CANNOT SHOW THAT ANY HARM WAS
           CAUSED BY DEFENDANTS ............................................................ 11

           A.  There Was Probable Cause to Prosecute
               Plaintiff ........................................................................ 11

           B.  The Individual Defendants Did Not Initiate
               Plaintiff's Prosecution.................................................... 13

           C.  Plaintiff Has Not Alleged Any Facts To Show That
               Defendants Were Motivated By Malice**Error!  Bookmark  not
               defined.**

POINT III

      EVEN ASSUMING PLAINTIFF'S AMENDED
      COMPLAINT IS SUFFICIENTLY PLED, THE
      INDIVIDUAL DEFENDANTS ARE ENTITLED
      TO QUALIFIED IMMUNITY ............................................................ 15

POINT IV

      DEFENDANT BRIAN STAMM SHOULD BE
      DISMISSED FROM THIS ACTION BECAUSE
      THERE ARE NO ALLEGATIONS THAT
      STAMM WAS PERSONALLY INVOLVED IN
      THE PROSECUTION OF PLAINTIFF ................................................ 17

POINT V

      PLAINTIFF'S *MONELL* CLAIM SHOULD BE
      DISMISSED ...................................................................................... 17

      A.  Plaintiff's *Monell* Claim Should Be Dismissed
          Because Plaintiff Cannot Establish An Underlying
          Constitutional Violation.................................................... 18

      B.  Plaintiff's *Monell* Claim Should Be Dismissed
          Because The City Cannot Be Liable For The
          Alleged Instances Of Prosecutorial Misconduct............................. 18

      C.  Plaintiff's *Monell* Claim Should Be Dismissed
          Because None Of The Alleged Instances of
          Prosecutorial Misconduct Are Sufficient To
          Support a *Monell* Claim .................................................. 19

      D.  Plaintiff's *Monell* Claim Should Be Dismissed
          Because Plaintiff Has Not Alleged Sufficient
          Supporting Facts ............................................................... 23

      E.  In The Event This Court Determines That The
          *Monell* Claim Should Survive, Defendants
          Respectfully Request That This Claim Be
          Bifurcated For Discovery And Trial................................... 24

CONCLUSION........................................................................................... 25

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                        <u>**Pages**</u>

*Adams v. Artus*, 09-CV-1941 (SLT)(VVP), 2012 U.S. Dist. LEXIS 45660
   (E.D.N.Y. Feb. 24, 2012),
    *aff'd* 2012 U.S. Dist. LEXIS 45656 (E.D.N.Y., Mar. 29, 2012) ............................................28

*Amato v. City of Saratoga Springs*,
   170 F.3d 311 (2d Cir. 1999)........................................................................................32, 33

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009).........................................................................................................7

*Baez v. Hennessy*,
   853 F.2d 73 (2d Cir. 1988).................................................................................................24

*Bellamy v. City of New York*, 12 Civ. 1025 (AMD)(PK),
   2017 U.S. Dist. LEXIS 75306 (E.D.N.Y. May 17, 2017) ........................................ 24, 30-31

*Bell Atlantic v. Twombly*,
   127 S. Ct. 1955 (2007)........................................................................................................7

*Bermudez v. City of New York*,
   No. 11-cv-750 (LAP), 2014 U.S. Dist. LEXIS 185566,
   (S.D.N.Y. Mar. 25, 2014),
    *aff'd in relevant part*, 790 F.3d 368 (2d Cir. 2015) ...............................................18

*Bernard v. United States*,
   25 F.3d 98 (2d Cir. 1994)...................................................................................................15

*Blair v. City of New York*,
   03 CV 1485, 2009 U.S. Dist. LEXIS 29300 (E.D.N.Y. Mar. 31, 2009) .................................9

*Brown v. City of New York*,
   13-cv-6912 (TPG), 2016 U.S. Dist. LEXIS 18670 (S.D.N.Y. Feb. 16, 2016) .......................32

*Bryant v. Maffucci*,
   923 F.2d 979 (2d Cir. 1991)...............................................................................................15

*Burnette v. Carothers*,
   192 F.3d 52 (2d Cir. 1999)...................................................................................................7

*Caldarola v. Calabrese*,
   298 F.3d 156 (2d Cir. 2002)...............................................................................................21

*City of Los Angeles v. Heller*,
   475 U.S. 796 (1986)...........................................................................................................33

**<u>Cases</u>**                                                                                          **<u>Pages</u>**

*Crown Heights Shomrim Volunteer Safety Patrol, Inc. v. City of New York*,
    No. 11-cv-329 (KAM), 2014 U.S. Dist. LEXIS 136293,
    (E.D.N.Y. Sept. 25, 2014)..................................................................................18

*Dettelis v. County of Cattarugas*,
    14-CV-1096A(Sr), 2016 U.S. Dist. LEXIS 57459 (W.D.N.Y. Mar. 31, 2016) ....................25

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007)..................................................................................7

*Escalera v. Lunn*,
    361 F.3d 737 (2d Cir. 2004)..................................................................................21

*Fappiano v. City of New York*,
    07-CV-2476 (SLT), 2014 U.S. Dist. LEXIS 179584 (E.D.N.Y. Jan. 7, 2015) ................ 26-27

*Fappiano v. City of New York*,
    No. 15-260-cv, 2016 U.S. App. LEXIS 4210 (2d Cir. Mar. 7, 2016) ..............................15, 19

*Fulton v. Felder*,
    05 Civ. 3652 (PKC), 2007 U.S. Dist. LEXIS 56213 (S.DN.Y. Aug, 1, 2007)......................23

*Fulton v. Robinson*,
    289 F.3d 188 (2d Cir. 2002)..................................................................................20

*Garcia v. Doe*,
    779 F.3d 84 (2d Cir. 2015)..................................................................................21

*Garofolo v. Coomb*,
    804 F.2d 201 (2d Cir. 1986)..................................................................................29

*Gierlinger v. Gleason*,
    160 F.3d 858 (2d Cir. 1998)..................................................................................9

*Gil v. County of Suffolk*,
    590 F. Supp.2d 360 (E.D.N.Y. 2008) ..................................................................15

*Grossman v. City of New York*,
    No. 07 Civ. 2764, 2008 U.S. Dist. LEXIS 19065,
    (S.D.N.Y. Feb. 28, 2008)..................................................................................20

*Harris v. City of Newburgh*, 16-CV-2731 (KMK),
    2017 U.S. Dist. LEXIS 159561 (S.D.N.Y. Sept. 27, 2017)......................................31

**Cases**                                                                                              **Pages**

*Harris v. Howard*,
    No. 08-cv-4837 (CM); 2009 U.S. Dist. LEXIS 105860,
    (S.D.N.Y. Oct. 30, 2009) ...................................................................................................1

*Hicks v. City of New York*,
    No. 17-cv-04888 (PAC), 2017 U.S. Dist. LEXIS 17903,
    (S.D.N.Y. Feb. 7, 2017) ...............................................................................................12, 18

*Hicks v. City of New York*,
    232 F. Supp. 3d 480 (S.D.N.Y. 2017)..........................................................................11, 12

*Jean v. City of New York*,
    No. 08-cv-00157 (RER), 2009 U.S. Dist. LEXIS 98239,
    (E.D.N.Y. Oct. 22, 2009),
    *aff'd*, 412 Fed. Appx. 352 (2d Cir. 2011) .............................................................18

*Jean-Laurent v. Wilkerson*,
    09-1929-pr, 2012 U.S. App. LEXIS 2631 (2d Cir. 2012) ....................................31

*Jefferson v. Javits*,
    No. 06-CV-6616,
    2010 U.S. Dist. LEXIS 104987 (E.D.N.Y. Sept. 30, 2010)...................................15

*Johnson v. City of New York*, No. 06-CV-630,
    2010 U.S. Dist. LEXIS 70207,
    (E.D.N.Y. July 13, 2010) ...............................................................................15

*Jones v. City of New York*,
    12-CV-3658, 2013 U.S. Dist. LEXIS 162235 (E.D.N.Y. Nov. 14, 2013)........................ 31-32

*Jones v. City of New York*,
    988 F. Supp. 2d 305 (E.D.N.Y. 2013) ..................................................................24

*Jouthe v. City of New York*,
    No. 05-cv-1374 (NGG) (VVP), 2009 U.S. Dist. LEXIS 18163,
    (E.D.N.Y. Mar. 10, 2009) ...............................................................................18

*Jovanovic v. City of New York*,
    486 Fed. App'x 149 (2d Cir. 2012)......................................................................13

*King v. Am. Airlines, Inc.*,
    284 F.3d 352 (2d Cir. 2002)..............................................................................6

*Kyles v. Whitley*,
    514 U.S. 419 (1995)........................................................................................26

**<u>Cases</u>**                                                                                          **<u>Pages</u>**

*Lee v. Corneil*,
    13-cv-8359, 2016 U.S. Dist. LEXIS 44660 (S.D.N.Y. Apr. 1, 2016) ......................................9

*Maldonado v. City of New York*,
    No. 17568-2004 (N.Y. Sup. Ct. Bronx Cty. 2004) ..................................................31

*Manganiello v. City of New York*,
    612 F.3d 149 (2d Cir. 2010)..............................................................................14, 18

*McCaffrey v. City of New York*,
    11 Civ. 1636 (RJS), 2013 U.S. Dist. LEXIS 18815 (S.D.N.Y. Feb. 7, 2013) ........................26

*McSorley v. Consolidated Rail Corp.*,
    581 F. Supp. 642 (S.D.N.Y. 1984) ....................................................................15

*Mejia v. City of New York*,
    119 F. Supp. 2d 232 (E.D.N.Y. 2000) ................................................................22

*Messerschmidt v. Millender*,
    132 S. Ct. 1235 (2012).................................................................................21

*Mineo v. City of New York*,
    No. 09-cv-2261, 2013 U.S. Dist. LEXIS 46953 (E.D.N.Y. Mar. 29, 2013)...........................32

*Newton v. City of New York*,
    640 F. Supp. 2d 426 (S.D.N.Y. Jul. 31, 2009) ..................................................10, 12

*Nnodimele v. Derienzo*,
    13-CV-3461 (ARR)(RLM),
    2016 U.S. Dist. LEXIS 9881 (S.D.N.Y. Jan. 27, 2016).........................................17

*Nzegwu v. Friedman*,
    No. 10-CV-02994 (CBA) (RML), 2014 U.S. Dist. LEXIS 44019,
    (E.D.N.Y. Mar. 31, 2014) ...........................................................................22

*Pearson v. Callahan*,
    555 U.S. 223 (2009).................................................................................21

*People v. Bellamy*,
    26 Misc. 3d 1210 (A) (Sup. Ct. Qns. Cty. 2010) ..................................................30

*People v. Benitez*,
    120 A.D.3d 705 (2nd Dept. 2014) ................................................................5, 28

*Pinaud v. City of Suffolk*,
    52 F.3d 1139 (2d Cir. 1995)..........................................................................24

**Cases**                                                                                          **Pages**

*Poux v. Cnty. of Suffolk*,
   No. 09 CV 3081, 2012 U.S. Dist. LEXIS 41196 (E.D.N.Y. Mar. 23, 2012)...........................16

*Poventud v. City of New York*,
   07 Civ. 3998 (S.D.N.Y. 2007) ............................................................................................31

*Ramos v. City of New York*,
   No. 21170-93 .......................................................................................................................31

*Rothstein v. Carriere*,
   373 F.3d 275, 283 (2d Cir. 2004)........................................................................................15

*Rounseville v. Zahl*,
   13 F.3d 625 (2d Cir. 1994)...................................................................................................20

*Saucier v. Katz*,
   533 U.S. 194 (2001).............................................................................................................21

*Savino v. City of New York*,
   331 F.3d 63 (2d Cir. 2003)........................................................................................14, 15, 16

*People v. Sayers*,
   64 A.D.3d 728 (2nd Dept. 2009) .........................................................................................30

*Smith v. City of New York*,
   No. 04-cv-3286 (TPG), 2010 U.S. Dist. LEXIS 88774,
   (S.D.N.Y. Aug. 27, 2010) ....................................................................................................18

*Su v. City of New York*,
   No. 06 Civ. 687 (E.D.N.Y. 2006) ........................................................................................31

*Taravella v. Town of Walcott*,
   599 F.3d 129 (2d Cir. 2010)..................................................................................................20

*Townes v. City of New York*,
   176 F.3d, 146 (2d Cir. 1999)......................................................................................9, 10, 18

*United States v. Feliciano*,
   223 F.3d 102 (2d Cir. 2000)..................................................................................................27

*United States v. Mapp*,
   170 F.3d 328 (2d Cir. 1999)..................................................................................................28

*Van de Kamp v. Goldstein*,
   555 U.S. 335 (2009)...............................................................................................................24

**Cases**                                                                                    **Pages**

*Vasquez v. City of New York*,
    14 Civ. 491 (RMB), 2014 U.S. Dist. LEXIS 157259,
    (S.D.N.Y. Nov. 6, 2014) .................................................................................12

*Walczyk v. Rio*,
    496 F.3d 139 (2d Cir. 2007) ........................................................................21

*West v. City of New York*,
    88-cv-1801, 1996 U.S. Dist. LEXIS 6239 (S.D.N.Y. May 8, 1996) ...............................32, 33

*Williams v. City of N.Y.*,
    No. 02-cv-3693 (CBM),
    2003 U.S. Dist. LEXIS 19078, S.D.N.Y. Oct. 23, 2003),
    *aff'd*, 2005 U.S. App. LEXIS 1207 (2d Cir. Jan. 21. 2005)....................................17

*Williams v. City of New York*,
    CV-07-5362 (NG), 2008 U.S. Dist. LEXIS 104730 (E.D.N.Y. Dec. 29, 2008)....................32

*Wilson v. City of New York*,
    480 Fed. Appx. 592 (2d Cir. 2012) ..............................................................19

*Wood v. Moss*,
    134 S. Ct. 2056 (2014) .........................................................................21-22

*Wray v. City of New York*,
    490 F.3d 189 (2d Cir. 2007).................................................................8, 10, 14

*Zalaski v. City of Hartford*,
    723 F.3d 382 (2d Cir. 2013)......................................................................21

**Statutes**

42 U.S.C. § 1983.................................................................................9, 10, 30

Fed. R. Civ. P. 8(a) .................................................................................7

Fed. R. Civ. P. 12(b)(6)........................................................................1, 2, 6, 7

Fed. R. Civ. P. 12(d) ..............................................................................7, 34

Fed. R.  Civ. P. 42(b) ...............................................................................32

Penal L. 160.15-4 ....................................................................................4

## PRELIMINARY STATEMENT

Plaintiff was identified as the perpetrator of a robbery on *six* separate occasions by the *sole* eyewitness to the robbery—Bernadette Johnson.  While it is true that another person was physically present in the store at the time of the robbery (Hazel Rodriguez), she was in the back of the store and did not get a good look at the perpetrator.  Plaintiff uses this second (irrelevant) individual to create smoke where none actually exists.  Plaintiff's distractions are not enough to overcome this motion to dismiss.

## STATEMENT OF FACTS

On June 24, 2009, at about 11:00 a.m. a Radio Shack store located at 87-09 Rockaway Beach Boulevard in Rockaway Park, Queens, was robbed by a single perpetrator who fled with between $300-400 (1st Trial Tr. at 188:20-22, relevant portions of this transcript are annexed as **Exhibit "A"**).  The robber approached and grabbed employee Bernadette Johnson and, pointing his gun to the stomach of the pregnant Ms. Johnson, directed that she give him the key to the cash register (*Id.* at 185:1-187:7).  Johnson steadily looked at his face (*Id.* at 188:3-5).[1] When Ms. Johnson looked towards the back of the store to see if her co-worker Hazel Rodriguez was there, the robber threatened to shoot both employees if Ms. Johnson made any noise to alert Ms. Rodriguez (*Id.* at 189:2-23).  When the robber made this threat, Ms. Johnson was looking at him (*Id.* at 189:24-25).  After the robber received the money, he pointed his gun at Ms. Johnson again and pushed her toward the rear of the store (*Id.* at 190:6-9).  The robber then ran out of the

---

[1] A second Radio Shack employee, Hazel Rodriguez, was in the back room at the time of the robbery and did not get a good view of the robber or the incident (1st Trial Tr. at 354:11-355:18, 395:16-24).  This is noteworthy because plaintiff repeatedly combines Ms. Johnson's and Ms. Rodriguez's accounts to the police (see Amended Complaint at ¶¶17, 18, 20, 33, 45) to provide the false impression that Ms. Johnson had originally told the police that the perpetrator was young , in his 20s or 30s and that he ran out of the store after the robbery.  That information came from Ms. Rodriguez, not Ms. Johnson, and Rodriguez so testified at the trial (*Id.* at 356:9-21, 363:24-364:2).

store in a "limping run" (*Id.* at 191:6-12).  After the robber left, Ms. Johnson locked the store and

called the police (*Id.* at 191:18-21).  When the police arrived, Ms. Johnson was interviewed and

described the perpetrator as "male Hispanic, five-six to five-eight, dark blue hoody, sunglasses,

goatee, blue jeans and black sneakers" (*Id.* at 224:20-23).

Subsequently, on or about June 30, 2009, the investigating detective, defendant

Raul Lopez, received information that someone calling the NYPD anonymous "TIPS" line had

stated that "'Rick' unknown last name that lives in 82-01 on the 6th floor was responsible," and

generated a DD5 report to memorialize this information  ("TIPS DD5" annexed as **Exhibit "B"**).

On July 2, 2009, eight days after the robbery, Bernadette Johnson was in the

vicinity of the intersection at Beach 96th Street and Rockaway Beach Boulevard when she saw

plaintiff again, this time he was the passenger in a car with the windows down (1st Trial Tr. at

195:20-196:12, 2nd Trial Tr. at 89:4-7, 90:10-14).  The car was waiting at a stoplight when:

> Q:     Did you take a look at him?
> A:     Yes.
> Q:     What, if anything, do you see the defendant do?
> A:     He's looking at me.
>
> *        *        *
>
> Q:     Could you see his eyes look at you?
> A:     Yes. And he froze.
> Q:     What do you mean froze?
> A:     Like his whole face froze, like he got stiff and the
> same with me.
> Q:     And you're both looking at each other?
> A:     Yes.
>
> *        *        *
>
> Q:     When you're looking at him and he's looking at
> you, your [sic] both frozen, right you say you froze.  What
> do you recognize about the defendant?
> A:     The face, the cheeks, this.
> Q:     And who is the guy in the car?
>
> A:     The same man who did the incident to me.

2

(1st Trial Tr. at 197:14-198:11)

Detective Lopez apprehended plaintiff on July 3, 2009.  That same day, the day *after* she saw plaintiff at the intersection, Ms. Johnson returned to the precinct and was shown a photo array containing plaintiff and five others.  She immediately identified plaintiff (*see* Array, annexed as **Exhibit "C"**).  Later that day, she was shown a lineup that included plaintiff and five other persons (Lineup report is annexed as **Exhibit "D"**).  She again pointed out plaintiff as the robber.  Due to the positive identifications of plaintiff as the perpetrator, plaintiff was formally arrested and subsequently indicted on the charges of violating Penal Law 160.15-4 (Robbery in the First Degree) and 160.05 (Robbery in the Third Degree).

The criminal court held an independent source hearing (the "Independent Source Hearing") on August 10, 2010, to confirm whether Bernadette Johnson could identify plaintiff as the robber.  After hearing testimony from Johnson that (1) she faced the robber (Independent Source Hearing Tr. at 17:1-3, annexed as **Exhibit "E"**), (2) she kept looking at his face throughout the incident (*Id*. at 19:11-20), and (3) she saw the robber again on July 2, 2009 (*Id.* at 22:17-23:1) the court found that Ms. Johnson had a good recollection of the incident and was a suitable independent source for an in-court identification of plaintiff as the robber (*Id.* at 64:23-66:23).  Bernadette Johnson subsequently identified plaintiff as the robber at his first trial:

> I can never forget that face.  That face is embedded
> in my mind.   It will always be there. (1st Trial Tr. at
> 192:7-8).

Neither the lineup nor the array nor the DD5 was shown to the jury.  Detective Lopez testified concerning how he received the TIPS information, but, due to plaintiff's counsel's objection, could not testify concerning the substance of the TIPS information (1st Trial Tr. at 295:7-296:2).  He also testified concerning how he received additional information about

plaintiff's whereabouts from the Intel Sergeant, Sgt. Stamm (1st Trial at 300:7-17), and then apprehended plaintiff.  Plaintiff was convicted of Robbery in the 1st Degree and Robbery in the 3rd Degree (1st Trial Tr. at 600:17-22).  Plaintiff was sentenced to 22 years to life in prison (Complaint at ¶67).

On August 20, 2014, the New York State Appellate Division, Second Department, reversed plaintiff's conviction and ordered a new trial.  The basis for the reversal was unrelated to either the photo array or the lineup or Ms. Johnson's testimony.[2]  At the second trial, the defense again raised the issue of the lineup to the Court, but the Court denied plaintiff's application to reopen the independent source hearing from the first trial (2nd Trial Tr. at 18:13-15, annexed. as **Exhibit "F"**).

Bernadette Johnson's testimony during the second criminal trial did not materially change.  Again she testified that she was looking straight at him during the incident (*Id.* at 72:20-25), and she again identified plaintiff as the robber (*Id*. at 66:1-13; 92:17-21; 127:15-16: "I know the man who did that is sitting in this courtroom, sir.  I know his name.  I will never forget him," 159:4-8).  Ms. Johnson also again testified that she saw plaintiff at the intersection on Rockaway Beach Boulevard on July 2, 2009 (*Id*. at 89:4-7, 90:10-14).  Despite Ms. Johnson's identification of plaintiff as the robber, plaintiff was found not guilty.

Plaintiff now brings suit on the basis that (1) both the photo array and the line-up shown to Bernadette Johnson were unfairly suggestive because none of the "fillers" in either the

---

[2] The Second Department's reason for vacating the conviction was that the prosecution had conflated the testimony of one of the investigating detectives to improperly suggest to the jury that an anonymous TIPS caller, who could not be cross-examined, had also implicated plaintiff. *People v. Benitez*, 120 A.D.3d 705 (2nd Dept. 2014).

array or the lineup resembled plaintiff, or Ms. Johnson's "description[3]" of the robber; (2) that Detective Lopez fabricated the TIPS call and created a false DD5 designed to convince the District Attorney's Office to prosecute plaintiff; and (3) a *Monell* claim against the City claiming that the District Attorney's Office encourages, or is at least deliberately indifferent to prosecutorial misconduct.

## STANDARD OF REVIEW

"[I]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including arrest reports, criminal complaints, indictments, and criminal disposition data." *Harris v. Howard*, No. 08-cv-4837 (CM), 2009 U.S. Dist. LEXIS 105860, at *5 (S.D.N.Y. Oct. 30, 2009). The facts of the robbery have already been litigated four times: (1) plaintiff's initial criminal trial held between October 12-19, 2010, at the Criminal Term of the York Supreme Court, Queens County (Indictment No. 2429-09); (2) plaintiff's appeal of his conviction; (3) plaintiff's second criminal trial held between March 2-11, 2015; and (4) plaintiff's action in the Court of Claims against the State of New York for damages arising from his incarceration (Claim No. 126521), which settled on the eve of trial on March 1, 2017. Plaintiff is in possession of the transcripts of both criminal trials, as well as various police documents generated by the incident, including most importantly the photo array and photographs of the line-up, which forms the basis of plaintiff's action. Therefore, as there are no questions of fact, this motion concerns only pure questions of law. A complaint may be dismissed pursuant to Rule 12(b)(6) where it fails to plead "enough facts to state a claim to relief that is plausible on its face." *See Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1975 (2007). In order to state a claim, the factual allegations contained in the pleading "must be enough to raise a

---

[3] Again, this is false as plaintiff appears to be relying upon Ms. Rodriguez's account, not Ms. Johnson's. *See* fn. 1, *supra*.

right to relief above the speculative level." *See Twombly*, 127 S. Ct. at 1965; *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'"). A complaint satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To the extent that the Court determines otherwise defendants respectfully request that this motion be converted to a summary judgment motion pursuant to Fed. R. Civ. Pro. 12(d).

## ARGUMENT

### POINT I

**PLAINTIFF'S DENIAL OF A FAIR TRIAL CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF HAS NOT PLEAD THAT ANY "FALSE" EVIDENCE CAUSED A VIOLATION OF HIS CONSTITUTIONAL RIGHTS**

Plaintiff's claim for denial of a fair trial rests upon two bases: first that defendants manufactured an intentionally faulty photo array and line-up for the purpose of influencing Ms. Johnson to identify plaintiff as the robber, and second that Detective Lopez created a false DD5 concerning the TIPS information for the purpose of influencing the QDAO into prosecuting plaintiff. This claim must be dismissed because (1) plaintiff has not plead that any of the evidence caused him to suffer harm, and (2) because superseding acts of the ADA who prosecuted the first criminal case broke the chain of causation between defendants and the alleged violation of plaintiff's constitutional rights.

**A.    Photo Array and Lineup**

Plaintiff's relies on the allegation that defendants "manufactured" evidence by showing the complaining victim, Bernadette Johnson, a suggestive photo array and lineup,

thereby causing her to erroneously believe that plaintiff was the robber of the Radio Shack. Under *Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007), a suggestive lineup is not by itself a constitutional violation. Rather, the constitutional violation exists when a plaintiff's right to a fair trial "is impaired by the admission of testimony regarding the unreliable identification." *Id.* Thus, if the unreliable evidence is not admitted at trial, then there is no constitutional violation. *Blair v. City of New York*, 03 CV 1485, 2009 U.S. Dist. LEXIS 29300 (E.D.N.Y. Mar. 31, 2009)("[t]he constitutional violation occurs when such evidence is admitted at trial and impairs the truth-seeking function of the court proceedings"); *Lee v. Corneil*, 13-cv-8359, 2016 U.S. Dist. LEXIS 44660, at *14 (S.D.N.Y. Apr. 1, 2016)(where complaining victim was unable to identify plaintiff until shown two questionable lineups, whereupon plaintiff was charged but the charges were dismissed on the eve of the grand jury, plaintiff's Section 1983 claim dismissed because "the lineups were never admitted as evidence in a proceeding against Lee").

In this matter, neither the photo array nor the lineup were introduced at either criminal trial—indeed, the purpose behind the Independent Source Hearing was to determine whether Bernadette Johnson could provide sufficient testimony to prosecute plaintiff.[4] Thus, even if the photo array and the lineup were unfairly suggestive, a jury never saw them and they could not have *caused* plaintiff's conviction. *See Townes v. City of New York*, 176 F.3d, 146 (2d Cir. 1999)("A §1983 action, like its state tort analogs, employs the principle of proximate causation") (citations omitted); *see also Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir.

---

[4] During a proceeding before the independent source hearing, held on June 14, 2010 (the "June 14, 2014 Hearing"), the ADA conceded that the lineup was suggestive and sought to use the photo array as the independent source. The court denied this request and insisted upon testimony directly from Ms. Johnson (6/14/10 Hearing at 2:14-3:14, 7:7-9:21, annexed as **Exhibit "G"**). Thus, the record is clear that to the extent there were deficiencies in the lineup, the ADA's Office was well aware of them.

1998)("as in all §1983 cases, the plaintiff must prove that the defendant's action was the proximate cause of the plaintiff's injury").

Plaintiff's claim should also be dismissed because it is well established that denial of a right to a fair trial claim will not lie where superseding acts of the prosecutor or the judge break the chain of causation between defendants' alleged conduct and the alleged constitutional violation. *Wray*, 490 F. 3d at 193. *See also Townes v. City of New York*, 176 F. 3d at 147 ("It is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment"). It was the prosecutor's decision taken with full knowledge of the array and the lineup, with any deficiencies thereof, to prosecute plaintiff. The criminal court, armed with the same knowledge, decided to permit Johnson to testify at trial.

*Hicks v. City of New York*, 232 F. Supp. 3d 480, 494 (S.D.N.Y. 2017) is strikingly similar to this action. In *Hicks*, plaintiff, whose rape conviction had been overturned, alleged that defendant officers had used a suggestive photo array to influence the complaining victim's identification of him as the rapist. The court found that the ADA's prosecution of plaintiff, coupled with the criminal judge's decision to permit the victim to testify against plaintiff at the independent source hearing constituted superseding acts that broke the chain of causation linking defendants to the constitutional violation:

> [T]he Prosecutors were well aware of the problems with the identification procedures Defendants used with [the victim], and despite these issues decided to continue the proceeding… The Prosecutors were not misled by the alleged suggestive identification procedures.
>
> \*      \*      \*
>
> Nor do the allegations support a finding that the alleged suggestive procedures misled the judge who

> conducted the hearing.  After to listening to the *Wade* evidence, the judge declared the unpreserved photo array suggestive as a matter of law, but determined that there was an independent basis for the admission of [the victim]'s in-court and line-up identifications [citations omitted]
>
> The chain of causation between Defendants and any alleged denial of fair trial based on suggestive identification procedures does not survive the independent decisions of the Prosecutors to continue prosecution or the hearing judge to permit [the victim]'s identifications at trial.

*Hicks*, 232 F. Supp. 3d at 494.

Here, as in *Hicks*, the question of whether the array or the lineup were improperly suggestive were directly addressed at the Independent Source Hearing and both the ADA and the judge were satisfied that Johnson herself could independently identify plaintiff as the robber. Thus, the chain of causation was been broken and defendants cannot be liable to plaintiff. *Newton v. City of New York*, 640 F. Supp. 2d 426, 443 (S.D.N.Y. Jul. 31, 2009); *Vasquez v. City of New York*, 14 Civ. 491 (RMB), 2014 U.S. Dist. LEXIS 157259, at *28 (S.D.N.Y. Nov. 6, 2014)(in the context of a malicious prosecution claim: "Here the trial court explicitly considered the propriety of [the victim]'s photo—and lineup—identifications of [plaintiff] at a *Wade* hearing and denied [plaintiff]'s application to suppress the identifications"). These actions broke the chain of causation and plaintiff cannot establish this claim.

**B.**    **Lopez DD5**

The second aspect of plaintiff's denial of fair trial claim is that Detective Lopez manufactured a false DD5 purporting to contain information from TIPS, which was forwarded to the DA's Office "knowing such false evidence was likely to influence a jury at trial to convict" (Amended Complaint at ¶80.  In order to state a claim for denial of right to a fair trial based upon fabricated information plaintiff must show an "(1) investigating official (2) fabricates

9

evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 Fed. App'x 149, 152 (2d Cir. 2012). The DD5 was never admitted into evidence because it contained inadmissible hearsay. In order for plaintiff to prove the evidence is likely to influence a jury, plaintiff has to also prove *materiality*. As plaintiff concedes, the heart of the criminal case against plaintiff was Johnson's own testimony (Amended Complaint at ¶70). Plaintiff was tried twice without the TIPS DD5 information and thus it was not material to the prosecution. The TIPS DD5 did not cause a deprivation of liberty because it was not admitted and plaintiff was prosecuted because he was identified by Ms. Johnson as the perpetrator on multiple occasions. The TIPS DD5 did not cause plaintiff to suffer a deprivation of liberty. The identification by Ms. Johnson was the sole cause.

Plaintiff's allegation that the TIPS DD5 was fabricated for the purpose of prosecuting plaintiff makes no sense in the context of the sequence of events. The TIPS DD5 was generated on June 30, 2009, with the subsequent photo array and line-up conducted on July 3rd. Johnson testified repeatedly that the day before she had seen the perpetrator at an intersection. It strains credulity that Detective Lopez could have randomly selected a target that would have matched Bernadette Johnson's memory of the perpetrator, especially since Ms. Johnson had just seen the plaintiff the day before. Indeed, the fact that Ms. Johnson reviewed photographs at the precinct after the robbery and failed to identify the perpetrator (Amended Complaint at ¶22) further suggests that she was not pressured into falsely identifying the robber.

Finally, since there is no allegation that any of the other defendants created the TIPS DD5, they  this claim should be dismissed against them.

## POINT II

## PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION SHOULD BE DISMISSED BECAUSE PLAINTIFF CANNOT REBUT THE PRESUMPTION THAT PROBABLE CAUSE EXISTED AND BECAUSE PLAINTIFF CANNOT SHOW THAT ANY HARM WAS CAUSED BY DEFENDANTS

Even if malicious prosecution is a possible vehicle for relief, plaintiff cannot possibly prevail because (1) plaintiff cannot rebut the presumption from his indictment that there was probable cause to prosecute him; and (2) as with plaintiff's denial of a fair trial claim, superseding acts of the ADA and the trial judge break the chain of causation between defendants' acts and plaintiff's conviction.

### A.     There Was Probable Cause to Prosecute Plaintiff

Probable cause is a complete defense to an allegation of malicious prosecution. *See Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010); *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). A grand jury indictment creates a presumption of probable cause. This presumption can *only* be rebutted if the plaintiff can establish that "the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Fappiano v. City of New York*, No. 15-260-cv, 2016 U.S. App. LEXIS 4210, at *6-7 (2d Cir. Mar. 7, 2016); *Rothstein v. Carriere*, 373 F.3d 275, 283 (2d Cir. 2004). Plaintiff bears the burden of proof in rebutting the presumption of probable cause that arises from an indictment. *See Savino*, 331 F.3d at 73. A plaintiff cannot meet this burden by offering "mere 'conjecture' and 'surmise' that [an] indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Savino*, 331 F.3d at 73 (citation omitted) *see also Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994) (plaintiff's claims of innocence did not rebut the presumption of probable cause created by an indictment); *Jefferson v. Javits*, No. 06-CV-6616, 2010 U.S. Dist. LEXIS 104987 (E.D.N.Y. Sept. 30, 2010) (granting summary

11

judgment for defendants despite plaintiff's unsupported allegation that his indictment was procured by defendants' false grand jury testimony).

Plaintiff was indicted by a Grand Jury in connection with his July 3, 2009 arrest, creating a presumption that probable cause existed for his prosecution (*see* Indictment, annexed as **Exhibit "H"**); *see McSorley v. Consolidated Rail Corp.*, 581 F. Supp. 642, 644 (S.D.N.Y. 1984) (where a grand jury returned an indictment or information against plaintiff, the existence of probable cause was *prima facie* established and negated an essential element of the malicious prosecution cause of action).  While plaintiff does not specifically allege that the indictment was obtained fraudulently, plaintiff identifies five pieces of "evidence" that were not presented to the grand jury: (1) that plaintiff walks with a limp and a cane, but that "eyewitnesses" (i.e. Ms. Johnson as she was the sole witness to the incident) had seen the perpetrator run away; (2) plaintiff did not fit the eyewitness description of a perpetrator in his 20s or 30s (again, only Bernadette Johnson saw the perpetrator); (3) the lineup at which plaintiff was identified as the perpetrator was unduly and impermissibly suggestive; (4) the photo array used to identify plaintiff was also suggestive; and (5) plaintiff had consented to a search of his apartment and no contraband or clothing worn by the robber was found (Amended Complaint at ¶67).  These five pieces of "evidence" are irrelevant because there is no duty to present exculpatory items to the Grand Jury.  *See Poux v. Cnty. of Suffolk*, No. 09 CV 3081, 2012 U.S. Dist. LEXIS 41196, at *84 (E.D.N.Y. Mar. 23, 2012)(the Government does not have a "duty to present every item of arguably exculpatory evidence in seeking an indictment"), *citing Savino v.* 331 F.3d at 75.

None of these are evidence of "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  With respect to (1) through (4), Bernadette Johnson had just seen plaintiff again *for the second time* the day *before* the photo array and

lineup and thereafter repeatedly identified plaintiff as the robber.  Indeed (1) and (2) were based entirely upon Ms. Johnson's own alleged description to police after the incident.  Even if true, the fact that Ms. Johnson's account changed slightly is of no moment.   Ms. Johnson *four times* (The Grand Jury, the Independent Source Hearing and both trials) gave sworn testimony that plaintiff was the robber and has never recanted her story.   The question of Ms. Johnson's identification was addressed at the independent source hearing, and the court found Ms. Johnson to be credible.   Finally, (5) is irrelevant because the fact that no contraband was found in his apartment means nothing.   The only thing stolen from the Radio Shack was easily disposable cash, and the fact that no contraband was found in plaintiff's apartment would not have given the grand jury a reason one way or the other to refuse to indict plaintiff.   Because the DA's office was well aware of the photo array and the lineup prior to the first trial, plaintiff cannot show that defendants withheld material information from the grand jury or the prosecutors. Plaintiff's claim thus fails on the ground that his grand jury indictment creates a presumption of probable cause which he cannot overcome.

Finally, even if plaintiff were to somehow rebut the presumption created by the indictment, his claim for malicious prosecution must fail because probable cause, i.e. Ms. Johnson's identification of him as the perpetrator, existed to prosecute him.  *See Nnodimele v. Derienzo*, 13-CV-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 9881, at *22 (S.D.N.Y. Jan. 27, 2016)("Even where a plaintiff can overcome the presumption of probable cause, defendants are entitled to establish probable cause independent of the indictment" based upon the victim's identification of plaintiff as the perpetrator).

**B.**     **The Individual Defendants Did Not Initiate Plaintiff's Prosecution**

Plaintiff's malicious prosecution also fails because the actions of the prosecutor and the criminal court are superseding causes that remove any potential liability from the

individual defendants.  A presumption exists that "[o]nce a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution." *Williams v. City of N.Y.*, No. 02-cv-3693 (CBM), 2003 U.S. Dist. LEXIS 19078, at *19 (S.D.N.Y. Oct. 23, 2003), *aff'd*, 2005 U.S. App. LEXIS 1207 (2d Cir. Jan. 21. 2005).  "To initiate at prosecution, a[n] [officer] must do more than report the crime or give testimony. He must play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010).  Thus, courts routinely hold that liability for malicious prosecution for the police is severed when officers provide information to the prosecutor who then independently decides to initiate a criminal prosecution.  *See Jean v. City of New York*, No. 08-cv-00157 (RER), 2009 U.S. Dist. LEXIS 98239, at *21-*24 (E.D.N.Y. Oct. 22, 2009), *aff'd*, 412 Fed. Appx. 352 (2d Cir. 2011) (quoting *Townes* 176 F.3d at 147 ("[T]he chain of causation between a[n] officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment").

Moreover, "[e]ven where officers use suggestive identification procedures or coercion, a prosecutor who fully manages the prosecution and investigates the witnesses, and subsequently decides to bring charges, may be a superseding cause." *Hicks v. City of New York*, No. 17-cv-04888 (PAC), 2017 U.S. Dist. LEXIS 17903, at *15-*16 (S.D.N.Y. Feb. 7, 2017) (citing *Bermudez v. City of New York*, No. 11-cv-750 (LAP), 2014 U.S. Dist. LEXIS 185566, at *22-*25 (S.D.N.Y. Mar. 25, 2014), *aff'd in relevant part*, 790 F.3d 368, 377 (2d Cir. 2015)).  This, again, is because a prosecutor is presumed to exercise "independent judgment in deciding whether to initiate and continue a criminal proceeding." *See Jouthe v. City of New York*, No. 05-

14

cv-1374 (NGG) (VVP), 2009 U.S. Dist. LEXIS 18163, at *35 (E.D.N.Y. Mar. 10, 2009) ("That [the officer] provided the prosecutor with the version of the incident told to him by the alleged victims does not demonstrate that he misled or otherwise pressured the prosecutor").

   The Court's decision to permit Ms. Johnson to identify plaintiff at trial and the QDAO's decision to continue with the prosecution of plaintiff, after learning the facts adduced regarding Ms. Johnson's identification of plaintiff, severs any liability on the part of the officers. *See Fappiano*, 2016 U.S. App. LEXIS 4210, at *8-9 (police officers not liable for prosecutor's decision to pursue charges after serology results, obtained after grand jury indictment, failed to link plaintiff to crime; summary judgment in favor of defendant officers on malicious prosecution claim affirmed). Thus, plaintiff cannot maintain his malicious prosecution claim against all defendants.

   Finally, plaintiff cannot demonstrate that defendants Libretto, Stamm and Grillo initiated the prosecution against him and thus the claim fails as to these defendants.

## POINT III

### EVEN IF PLAINTIFF'S AMENDED COMPLAINT IS SUFFICIENTLY PLED, THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

   "Qualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Taravella v. Town of Walcott*, 599 F.3d 129, 133 (2d Cir. 2010). "The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *see also Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) ("[T]his question is not answered by reference to how courts or lawyers might have understood the state of the law.") Qualified immunity offers officials "breathing room to

15

make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012).

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Wood v. Moss*, 134 S. Ct. 2056, 2065 (2014); *see also Garcia v. Doe*, 779 F.3d 84, 97 (2d Cir. 2015) ("[Q]ualified immunity . . . should be resolved when possible on a motion to dismiss.").

In a malicious prosecution claim, the existence of arguable probable cause "is measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the preceding warrantless arrest." *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000). When a court determines that there was probable cause at the time of the arrest, there can be no claim for malicious prosecution "in the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest." *Nzegwu v. Friedman*, No. 10-CV-02994 (CBA) (RML), 2014 U.S. Dist. LEXIS 44019, at *39 (E.D.N.Y. Mar. 31, 2014). As discussed above, the evidence in the record establishes, at a minimum, that officers of reasonable competence faced with the facts known to the defendants at the time of the arrest could disagree on whether probable cause to arrest plaintiff existed. Bernadette Johnson identified plaintiff in a photo array and a lineup, stated she had gotten a good look at the perpetrator and provided details of the robbery. Defendants are entitled to qualified immunity with respect to the malicious prosecution and denial of fair trial claims because it was reasonable for them to believe that their actions did not violate plaintiff's constitutional rights,

and plaintiff has not alleged the existence of any exculpatory evidence that defendants became aware of between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the underlying arrest.

### POINT IV

### DEFENDANT BRIAN STAMM SHOULD BE DISMISSED FROM THIS ACTION BECAUSE THERE ARE NO ALLEGATIONS THAT STAMM WAS PERSONALLY INVOLVED IN THE PROSECUTION OF PLAINTIFF

In addition to the reasons already stated, defendant Brian Stamm should be dismissed from this action because there is no allegation that he either maliciously prosecuted plaintiff or denied him a fair trial.  The only allegations concerning Stamm are his involvement in the investigation and arrest of plaintiff (Amended Complaint at ¶¶34, 36, 38, 44-51, 53). Plaintiff does not assert a false arrest claim.  There is no allegation that he played any part in creating the lineup, or that he drafted the TIPS DD5, or that he provided any information to the QDAO, or that he played any role in the prosecution of plaintiff.

### POINT V

### PLAINTIFF'S *MONELL* CLAIM SHOULD BE DISMISSED

Plaintiff asserts a *Monell* claim that alleges the City of New York, through the QDAO has a policy or practice of deliberate indifference to prosecutorial misconduct by its ADAs and that as a result in plaintiff's criminal trial, the prosecuting ADA violated plaintiff's rights by (1) failing to provide *Brady* information to plaintiff prior to the criminal trial; (2) knowingly presenting, and failing to correct, false testimony at the independent source hearing and trial; (3) knowingly eliciting improper hearsay testimony; and (4) making false and misleading arguments during summation (Amended Complaint at ¶¶89-114).  As will be discussed below, these allegations are insufficient to support a *Monell* claim.

17

**A.      Plaintiff's *Monell* Claim Should Be Dismissed Because Plaintiff Cannot Establish An Underlying Constitutional Violation**

As a preliminary matter, plaintiff's *Monell* claim should be dismissed because, as shown above, there is no underlying constitutional violation.  *See Fulton v. Felder*, 05 Civ. 3652 (PKC), 2007 U.S. Dist. LEXIS 56213, at *9 (S.DN.Y. Aug, 1, 2007)("absent a constitutional violation, any corresponding claim against a governmental entity will fail")(citation omitted).

**B.      Plaintiff's *Monell* Claim Should Be Dismissed Because The City Cannot Be Liable For The Alleged Instances Of Prosecutorial Misconduct**

Plaintiff's *Monell* claim should also be dismissed because as a matter of law, the City "cannot be liable for the Queens County District Attorney's Office decisions regarding prosecutions."  *Bellamy v. City of New York*, 12 Civ. 1025 (AMD)(PK), 2017 U.S. Dist. LEXIS 75306, at *105 (E.D.N.Y. May 17, 2017), *citing Pinaud v. City of Suffolk*, 52 F.3d 1139, 1153 (2d Cir. 1995).  The reason for this is that "'[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State' and not the municipality."  *Bellamy*, 2017 U.S. Dist. LEXIS 75306, at *105, *quoting Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988).

While it is true that a DA may act as a municipal policymaker when he acts as the manager of the office and not in a prosecutorial capacity, the Supreme Court has held that "matters of supervision and training related to the prosecutor's basic trial advocacy responsibilities are prosecutorial and not administrative."  *Bellamy*, 2017 U.S. Dist. LEXIS 75306, at *105, *citing Van de Kamp v. Goldstein*, 555 U.S. 335, 345-348 (2009).  Other Courts in this Circuit have thus found that the conduct at issue in this case could not be laid at the feet of a municipality.  *Jones v. City of New York*, 988 F. Supp. 2d 305, 314 (E.D.N.Y. 2013)(J. Weinstein, dismissing *Monell* claim against the City: "While the City is a properly named interested party, it is not itself liable for the conduct of the district attorney in failing to properly

18

train his assistants with respect to specific aspects of prosecuting criminals.  The City cannot control or intervene in such training in any way"); *Dettelis v. County of Cattarugas*, 14-CV-1096A(Sr), 2016 U.S. Dist. LEXIS 57459 (W.D.N.Y. Mar. 31, 2016)(finding that when district attorney was acting as a representative of the state, not the county, when making decisions concerning prosecution of plaintiff).    Simply put, the conduct at issue is not municipal conduct and the City cannot be held liable.   Thus, if plaintiff believes that the QDAO violated his constitutional rights, he should seek redress from the State, not the City.   Indeed, plaintiff has already sued the State of New York for the same allegations raised herein.

**C.** **Plaintiff's *Monell* Claim Should Be Dismissed Because None Of The Alleged Instances of Prosecutorial Misconduct Are Sufficient To Support a *Monell* Claim**

In the Amended Complaint (¶¶90-112), plaintiff cites to the following instances of alleged prosecutorial misconduct:

- The prosecutor's failure to inform the court or criminal defense counsel that there had been a disagreement between Detective Lopez and ADA Grillo concerning the composition of the lineup, which plaintiff considers *Brady* material.
- That at the independent source hearting the prosecutor caused Ms. Johnson to change her testimony to conform to plaintiff's physical appearance and condition.
- That at the hearing, the prosecutor also used leading questioning to cause Ms. Johnson to testify that she saw plaintiff limping;
- That also during the hearing the prosecutor elicited false testimony from Ms. Johnson and failed to correct it, namely that Johnson had observed the perpetrator for 5 minutes and the entire incident took 30 minutes, whereas the video evidence showed otherwise;
- That during the criminal trial again elicited false testimony from Detective Lopez and then referred to it at summation.

None of these acts violated plaintiff's constitutional rights.

Plaintiff claims that the disagreement between ADA Grillo and Detective Lopez concerning whether or not the lineup was suggestive constituted *Brady* information that should have been turned over to plaintiff's defense counsel.  Putting aside the question of whether this

information would even have fallen under *Brady*, plaintiff's claim should fail.  To establish a claim for a *Brady* violation, a plaintiff must show three elements: (1) that the evidence at issue be favorable to the accused; (2) the evidence must have been willfully or inadvertently suppressed by the State; and (3) prejudice must have ensued.  *Fappiano v. City of New York*, 07-CV-2476 (SLT), 2014 U.S. Dist. LEXIS 179584, at *43-44 (E.D.N.Y. Jan. 7, 2015).  The suppressed evidence must also be material.  The question is not whether the trial would have had a different result had the jury been exposed to the suppressed evidence, but "whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *McCaffrey v. City of New York*, 11 Civ. 1636 (RJS), 2013 U.S. Dist. LEXIS 18815 (S.D.N.Y. Feb. 7, 2013).  Thus, there must be a reasonable probability that the evidence would have "undermine[d] confidence in the outcome of the trial."  *Fappiano*, 2014 U.S. Dist. LEXIS 179584, at *44, (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

Even if the disagreement between Detective Lopez and ADA Grillo somehow constituted *Brady* material that should have been turned over to plaintiff during his criminal trial, this disagreement did not prevent plaintiff from receiving a fair trial because, as set forth above, the question of whether the lineup was suggestive or not was addressed by the criminal court during the June 14, 2010 Hearing and the Independent Source Hearing.  At the June 14, 2010 Hearing the prosecution essentially conceded that the lineup was unduly suggestive and that it would not be used at trial, while the court denied the prosecution's application to use the photo array at the independent source hearing instead of Ms. Johnson's in-person testimony (June 14, 2010 Hearing at 4:3-6:7).  The defense and the court were well aware that the lineup was deficient. An additional detail casting doubt against the lineup could not have been material because the lineup was never used at trial.

Moreover, Johnson repeatedly testified at the independent source hearing and the two subsequent trials that plaintiff was the person who robbed the Radio Shack. The lineup could not have unfairly influenced Johnson's opinion because she had just seen plaintiff the day before the lineup at the intersection.

Plaintiff also bases his *Monell* claim a series of alleged missteps by the prosecutor during the independent source hearing and her trial summation. In fact, plaintiff cannot show that the prosecutor's summation denied him a constitutional right. "A prosecutor's improper summation results in a denial of due process when the improper statements cause substantial prejudice to the defendant [and] the existence of substantial prejudice involves three factors: the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *United States v. Feliciano*, 223 F.3d 102, 123 (2d Cir. 2000) (citation omitted). "[Litigants] who contend that a prosecutor's remarks warrant reversal face a heavy burden, because the misconduct alleged must be so severe and significant as to result in the denial of their right to a fair trial." *Id.* (citation omitted). "[R]arely will an improper summation meet the requisite level of prejudice." *United States v. Mapp*, 170 F.3d 328, 337 (2d Cir. 1999); *see also Adams v. Artus*, 09-CV-1941 (SLT)(VVP), 2012 U.S. Dist. LEXIS 45660, at *25 (E.D.N.Y. Feb. 24, 2012) ("Remarks that are merely 'undesirable' or 'universally condemned' do not clear this hurdle.") (citation omitted), *aff'd* 2012 U.S. Dist. LEXIS 45656 (E.D.N.Y., Mar. 29, 2012).

During the prosecuting ADA's summation, she referred to the TIPS phone call and conflated information obtained from the TIPS caller with later information obtained by

Detective Lopez concerning plaintiff's whereabouts (Trial at 542:4-20).[5]  Plaintiff's counsel objected twice to this portion of the summation and both times the Court overruled the objection. Even though this ultimately formed the basis for the Second Circuit overturning plaintiff's conviction, the ADA's summation could not have violated plaintiff's constitutional rights because the Second Circuit specifically found that "we are satisfied that the verdict of guilt was not against the weight of the evidence." *Benitez*, 120 A.D. at 706.  Thus, there could not have been any certainty that plaintiff would have been convicted but for the TIPS reference and plaintiff cannot satisfy his burden that the TIPS reference caused his conviction.  Put another way, Ms. Johnson's testimony by itself would have been enough to convict plaintiff.

Plaintiff's allegations concerning prosecutorial misconduct during the Independent Source Hearing are even weaker.  Plaintiff contends that the ADA, using leading questioning, compelled Ms. Johnson to "change" her testimony and identify plaintiff as the robber.   During these instances, plaintiff's counsel lodged objections to Ms. Johnson's testimony, including an objection that the ADA was leading Johnson in her testimony that the robber was limping.  The Court overruled these objections (Independent Source Hearing at 20:10-21:7).  Plaintiff's counsel subsequently had the opportunity to question Ms. Johnson on these issues, including Ms. Johnson's description of the robber and the length of time she was able to observe him (Independent Source Hearing at 43:4-47:18).  Indeed, at trial plaintiff's criminal counsel thoroughly cross-examined Johnson concerning her original description of the robber, and her testimony that she told police that the robber ran with a limp (1st Trial Tr. at

---

[5] However, it should be mentioned that during the trial when Detective Lopez was about to testify as to the content of the TIPS call, plaintiff's counsel objected and the objection was sustained by the Court (1st Trial Tr. at 295:16-296:8).  Subsequently, when Detective Lopez testified about his actions taken after receiving additional information obtained concerning plaintiff's whereabouts, plaintiff's counsel failed to object (1st Trial Tr. at 300:7-25).

224:20-227:12).   Thus, plaintiff could not have suffered any prejudice.   In any event, the

harmless error doctrine is applicable to prosecutorial misconduct involving statements to the

jury.  *Garofolo v. Coomb*, 804 F.2d 201, 206 (2d Cir. 1986) (citation omitted).

Finally, plaintiff makes much of the fact that Bernadette Johnson testified at trial

that the entire incident took about 30 minutes and that she was staring at the robber for 5

minutes, which is not borne out by the video, and claims that it was prosecutorial misconduct for

the ADA to not have corrected this testimony.  This discrepancy is not material and has nothing

to do with Johnson's identification of plaintiff as the robber.  Defendants submit that this is not a

basis to hold the City liable.  Taken as a whole in the context of the entire trial, it is clear no

substantial prejudice resulted.

**D.**     **Plaintiff's *Monell* Claim Should Be Dismissed Because Plaintiff Has Not Alleged Sufficient Supporting Facts**

In support of his *Monell* claim, plaintiff attaches a list of 118 cases dating back to

1985 in which he alleges that the QDAO committed prosecutorial misconduct and a self-serving

law review article drafted by plaintiff's own counsel.   Essentially plaintiff has assembled a

laundry list of every single instance where a conviction obtained by QDAO was overturned and

used it as "evidence" of and unlawful policy.  85 of the 118 cases date from the 80s and 90s, and

another 12 for the period 2010-present, which post-date plaintiff's conviction.  For the period

2007-2010, there are only five cases listed.  Of these, *People v. Bellamy*, 26 Misc. 3d 1210 (A)

(Sup. Ct. Qns. Cty. 2010) (No. 107 on plaintiff's Exhibit A to the Amended Complaint) resulted

in a Section 1983 lawsuit alleging an extremely similar *Monell* claim, which was dismissed in

*Bellamy v. City of New York,* 12 Civ. 1025 (AMD)(PK), 2017 U.S. Dist. LEXIS 75306

(E.D.N.Y. May 17, 2017).  Another case, *People v. Sayers*, 64 A.D.3d 728, 732 (2nd Dept. 2009),

appears to have mainly turned on the lower court's error in admitting evidence of prior criminal

cases of a co-defendant without proper instruction ("Here, as a result of the trial court's failure to parse the testimony and instructions relating to evidence of uncharged crimes, the overwhelming majority of the evidence presented at the trial pertained to the prior bad acts of the codefendant, rather than the instant offenses of which the defendant was convicted").  The remaining three cases concern the prompt disclosure of *Brady* or *Rosario* information, but, as discussed above, the allegation in plaintiff's Amended Complaint that QDAO failed to turn over Brady information forms a minor part of his *Monell* claim.  Defendants submit that these cases are insufficient to establish that the City had unlawful practice or policy.[6]

Moreover, it is well established in this Circuit that citation to other lawsuits is insufficient to support a *Monell* claim.  *See Jean-Laurent v. Wilkerson*, 09-1929-pr, 2012 U.S. App. LEXIS 2631, at *9 (2d Cir. 2012)("Jean-Laurent's citation to various lawsuits involving inmate claims for the excessive use of force is not probative of the existence of an underlying policy that could be relevant here"); *Jones v. City of New York*, 12-CV-3658, 2013 U.S. Dist. LEXIS 162235, at *37 (E.D.N.Y. Nov. 14, 2013)("the existence of other lawsuits against the City alleging similar violations of constitutional rights also does not establish a policy or custom as necessary under *Monell*").  Accordingly, plaintiff's *Monell* claim should be dismissed.

**E.    In The Event This Court Determines That The *Monell* Claim Should Survive, Defendants Request That This Claim Be Bifurcated For Discovery And Trial**

---

[6] Plaintiff also cites to a Fordham Law Review article drafted by his attorney as his other evidence.  This article discusses several cases handled by counsel's firm with similar allegations to this case: *Ramos v. City of New York*, No. 21170-93 (N.Y.Sup.Ct. Bronx Cty. 1997, *Poventud v. City of New York*, 07 Civ. 3998 (S.D.N.Y. 2007), *Maldonado v. City of New York*, No. 17568-2004 (N.Y. Sup. Ct. Bronx Cty. 2004) and *Su v. City of New York*, No. 06 Civ. 687 (E.D.N.Y. 2006).  Notably each of these cases settled before trial—there was no finding of liability against the City.  The article is rife with hearsay, including counsel's summaries of deposition transcripts and other evidence, and has no value.

"Courts in this Circuit favor bifurcating *Monell* claims." *Mineo v. City of New York*, No. 09-cv-2261, 2013 U.S. Dist. LEXIS 46953, at *4 (E.D.N.Y. Mar. 29, 2013)(case omitted).  Bifurcation "may be appropriate where … the litigation of the first issue might eliminate the need to litigate the second issue." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999) (citation omitted).  "This practice makes sense, because in order to establish liability against municipal defendants in a *Monell* claim, a plaintiff must prove both that he suffered a constitutional violation and that the constitutional harm suffered was a result of a municipal policy or custom." *Brown v. City of New York*, 13-cv-6912 (TPG), 2016 U.S. Dist. LEXIS 18670, at *4 (S.D.N.Y. Feb. 16, 2016), *citing Monell*, 436 U.S. at 694-95.  Thus, since there is no finding of *Monell* liability without first finding a constitutional violation, in an effort to promote convenience and economy, courts in this circuit have bifurcated *Monell* claims and stayed their discovery until a plaintiff has succeeded in establishing liability on the part of the individual defendants. *Id*. at *4.  Thus, in the event the Court is unwilling to dismiss plaintiff's *Monell* claim at this time, bifurcation is appropriate to potentially avoid this voluminous and expensive discovery.

## CONCLUSION

For the foregoing reasons, Defendants City of New York, Raul Lopez, Frank Libretto, Brian Stamm and Tina Grillo respectfully request that the Court dismiss plaintiff's complaint with prejudice, convert this motion under Fed. R. Civ. P. 12(d) as necessary, and such other and further relief as the Court deems just and proper.

Dated:        New York, New York
              December 1, 2017

ZACHARY W. CARTER
Corporation Counsel of the City of New York
Attorney for Defendants City of New York, Raul
Lopez, Frank Libretto, Brian Stamm and Tina
Grillo
100 Church Street
New York, New York 10007
(212) 356-2654


By:   /s/
      Michael K. Gertzer
      Senior Counsel
      Special Federal Litigation Division

26