UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RICARDO BENITEZ,

                         Plaintiff,

       -against-                                 17-cv-03827 (SJ)(SJB)

THE CITY OF NEW YORK, RAUL LOPEZ,
FRANK LIBRETTO, SERGEANT STAMM,
AND TINA GRILLO,

                        Defendants.

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION SEEKING TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO
FED.R.CIV.PRO. 12(b)(6)**
_____

LAW OFFICES OF JOEL B. RUDIN, P.C.
Joel B. Rudin
Haran Tae
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
jbrudin@rudinlaw.com
htae@rudinlaw.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................iv

PRELIMINARY STATEMENT.......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 3

STANDARD OF REVIEW ............................................................................................... 3

ARGUMENT

    POINT I

    BENITEZ HAS STATED A PLAUSIBLE EVIDENCE-MANUFACTURING
    CLAIM.......................................................................................................................... 5

        A.  Benitez Has Alleged Plausible Facts Sufficient to Support His Claim ................. 5

        B.  Defendants Misconstrue Benitez's Claim and Improperly Rely on
            Materials Outside of the Pleadings ........................................................................ 6

            1.  Benitez's Claim Is Based Upon the Fabrication, During the
                Investigative Stage, of False Evidence and Its Use to Cause His
                Deprivation of Liberty Following His Arraignment; Whether Such
                Evidence Was Also Introduced at Trial Is Irrelevant to His Claim ................. 6

            2.  Superseding Causation Is a Jury Question and, In Any Event,
                Defendants Have Not Established It as a Matter of Law ................................. 7

    POINT II

    BENITEZ HAS STATED A PLAUSIBLE MALICIOUS PROSECUTION
    CLAIM........................................................................................................................ 10

        A.  Benitez Has Adequately Pled Lack of Probable Cause and Initiation................. 10

            1.  Lack of Probable Cause ................................................................................. 10

            2.  Initiation........................................................................................................ 12

         B.  No Superseding Cause Cut Off the Individual Defendants' Liability ................. 13

    POINT III

    THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY .............. 13

POINT IV

BENITEZ HAS STATED A PLAUSIBLE MUNICIPAL-LIABILITY CLAIM.............. 14

    A.  The Law Governing *Monell* Liability ................................................... 14

    B.  The City May Be Held Liable Under § 1983 Based on the Queens D.A.'s
        Actions (or Inaction) as a Final Policymaking Official ........................................ 15

    C.  Benitez Has Plausibly Pled an Underlying Fair Trial Violation.......................... 19

    D.  Benitez Has Plausibly Pled that the Queens D.A. Was Deliberately
        Indifferent to the Need to Train, Supervise, or Discipline Prosecutors in
        Their Constitutional Obligations and that this Policy Caused Prosecutors
        to Violate Benitez's  Constitutional Right to a Fair Trial..................................... 22

CONCLUSION ...................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) ............................... 15, 23, 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 3

*Babi-Ali v. City of New York*, 979 F. Supp. 268 (S.D.N.Y. 1997)........................................ 22, 25

*Bailey v. City of New York*, 79 F. Supp. 3d 424 (E.D.N.Y. 2015)................................... 14, 18, 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 3

*Bellamy v. City of New York*, No. 12 Civ. 1025, 2017 WL 2189528 (E.D.N.Y. May 17, 2017) ................................................................................................................................. 17

*Bermudez v. City of New York*, 790 F.3d 368 (2d Cir. 2015) .................................................. 5, 9

*Blake v. Race*, 487 F. Supp. 2d 187 (E.D.N.Y. 2007) ........................................................... 9

*Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir. 1989) ......................................................... 24

*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003) ..................................................... 10, 11

*Brown v. Tracy*, 299 F. Supp. 2d 77 (E.D.N.Y. 2004)........................................................ 20

*Cash v. Cty. of Erie*, 654 F.3d 324 (2d Cir. 2011) ........................................................ 14, 23, 25

*City of Canton v. Harris*, 489 U.S. 378 (1989)................................................................... 15

*Collins v. City of New York*, 923 F. Supp. 2d 462 (E.D.N.Y. 2013)....................................... 18, 22

*Colon v. City of New York*, 60 N.Y.2d 78 (1983) ................................................................. 11

*Colon v. City of New York*, No. 09-CV-8, 2009 WL 4263362 (E.D.N.Y. Nov. 25, 2009)........... 10

*Connick v. Thompson*, 563 U.S. 51 (2011) ......................................................................... 15

*Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 1994) ....................................................................... 10

*DaCosta v. Tranchina*, No. 15-CV-5174, 2017 WL 6372710 (E.D.N.Y. Dec. 12, 2017) ..... 11, 12

*DiSimone v. Phillips*, 461 F.3d 181 (2d Cir. 2006)............................................................ 21

*Disorbo v. Hoy*, 74 F. App'x 101 (2d Cir. 2003)............................................................... 25

*Drake v. Portuondo*, 553 F.3d 230 (2d Cir. 2009)............................................................. 19

*Fappiano v. City of New York*, No. 01-CV-2476, 2015 WL 94190 (E.D.N.Y. Jan. 7, 2015) ............................................................................................................................... 11

*Fiacco v. City of Rensselaer*, 783 F.2d 319 (2d Cir. 1986) .................................... 23, 25

*Ford v. Reynolds*, 326 F. Supp. 2d 392 (E.D.N.Y. 2004) ............................................ 3

*Garnett v. Undercover Officer C0039*, 838 F.3d 265 (2d Cir. 2016) ............................ 5

*Garnett v. Undercover Officer C0039*, No. 1:13-CV-7083-GHW, 2015 WL 1539044 (S.D.N.Y. Apr. 6, 2015) ............................................................................................... 5

*Gentile v. Cty. of Suffolk*, 926 F.2d 142 (2d Cir. 1991) ................................... 15, 18, 24

*Giglio v. United States*, 405 U.S. 150 (1972) ............................................................ 19

*Goel v. Bunge, Ltd.*, 820 F.3d 554 (2d Cir. 2016) .................................................... 3, 4

*Goldstein v. City of Long Beach*, 715 F.3d 750 (9th Cir. 2013) ................................ 17

*Green v. Maraio*, 722 F.2d 1013 (2d Cir. 1983) .......................................................... 3

*Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000) ..................... 4

*Hicks v. City of New York*, 232 F. Supp. 3d 480 (S.D.N.Y. 2017) ............................ 8, 9

*Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007) ..................................................... 7

*Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479 (2d Cir. 2011) .......................... 16

*Isufi v. Prometal Constr., Inc.*, 927 F. Supp. 2d 50 (E.D.N.Y. 2013) ......................... 16

*Jenkins v. Artuz*, 294 F.3d 284 (2d Cir. 2002) ........................................................ 20

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) .......................................... 13

*Johnson v. Kings Cty. Dist. Attorney's Office*, 308 A.D.2d 278 (2d Dep't 2003) ........ 16

*Johnson v. Louisiana*, No. 09-55, 2010 WL 996475 (W.D. La. Mar. 16, 2010) .......... 18

*Jones v. City of New York*, 988 F. Supp. 2d 305 (E.D.N.Y. 2013) ........................ 18, 24

*Jovanovic v. City of New York*, No. 04 Civ. 8437, 2010 WL 8500283 (S.D.N.Y. Sept. 28, 2010) ............................................................................................................................. 17

*Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004) ....................................... 7, 9

*Kinzer v. Jackson*, 316 F.3d 139 (2d Cir. 2003) ........................................................ 10

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) ........................................................ 4

*Kyles v. Whitley*, 514 U.S. 419 (1995) ........................................................ 21

*Lopez v. City of New York*, 105 F. Supp. 3d 242 (E.D.N.Y. 2015) ................................................ 9

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010) ....................................... 11, 12, 13

*Manson v. Brathwaite*, 432 U.S. 98 (1977) ........................................................ 20

*Marshall v. Sullivan*, 105 F.3d 47 (2d Cir. 1996) ........................................................ 11

*McCants v. City of Newburgh*, No. 14 CV 556, 2014 WL 6645987 (S.D.N.Y. Nov. 21, 2014) ........................................................ 24

*McMillian v. Monroe Cty.*, 520 U.S. 781 (1997) ....................................... 14, 15, 16, 17

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003) .............................................. 4

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ........................................................ 2, 14

*Myers v. County of Orange*, 157 F.3d 66 (2d Cir. 1998) ....................................... 15, 16, 17, 18

*Napue v. Illinois*, 360 U.S. 264 (1959) ........................................................ 19

*Owen v. City of Independence*, 445 U.S. 622 (1980) ........................................................ 17

*PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir. 1996) ........................................................ 6

*People v. Benitez*, 120 A.D.3d 705 (2d Dep't 2014) ........................................................ 6, 21

*Perry v. New Hampshire*, 565 U.S. 228 (2012) ........................................................ 12

*Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) ........................................................ 19

*Ramos v. City of New York*, 285 A.D.2d 284 (1st Dep't 2001) ........................................................ 16, 23

*Redd v. N.Y. Div. of Parole*, 678 F.3d 166 (2d Cir. 2012) ........................................................ 19

*Reynolds v. Giuliani*, 506 F.3d 183 (2d Cir. 2007) ........................................................ 23

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997) ........................................... 5, 7, 12

*Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119 (2d Cir. 1991) ........................................................ 7, 23

*Ronzani v. Sanofi S.A.*, 899 F.2d 195 (2d Cir. 1990) ........................................................ 7

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) ........................................................ 3, 4

*Sahu v. Union Carbide Corp.*, 548 F.3d 59 (2d Cir. 2008) ........................................................ 4

*Shabazz v. Kailer*, 201 F. Supp. 3d 386 (S.D.N.Y. 2016) .............................................. 5

*Su v. Filion*, 335 F.3d 119 (2d Cir. 2003) ...................................................................... 19

*United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72 (2d Cir. 2014) ................... 20

*United States v. Emmenegger*, 329 F. Supp. 2d 416 (S.D.N.Y. 2004) ......................... 16

*United States v. Feliciano*, 223 F.3d 102 (2d Cir. 2000) .............................................. 20

*United States v. Gaudin*, 515 U.S. 506 (1995)............................................................... 19

*United States v. Modica*, 663 F.2d 1173 (2d Cir. 1981) ............................................... 20

*Van de Kamp v. Goldstein*, 555 U.S. 335 (2009)............................................... 16, 17, 18

*Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995)................................................. 23

*Walker v. City of New York,* 974 F.2d 293 (2d Cir. 1992)......................... 15, 16, 17, 18

*Wearry v. Cain*, 136 S. Ct. 1002 (2016) ....................................................................... 19

*Wray v. City of New York,* 490 F.3d 189 (2d Cir. 2007)............................................. 7, 8

*Young v. Conway,* 698 F.3d 69 (2d Cir. 2012) ............................................................... 8

*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000) ......................................................... 7, 9

**Statutes**

Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 3

Fed. R. Civ. P. 8(e) .......................................................................................................... 6

Fed. R. Civ. P. 12(b)(6)................................................................................................. 2, 3

Fed. R. Civ. P. 12(d) ....................................................................................................... 4

Fed. R. Civ. P. 15(a)(2).................................................................................................... 7

**Other Authorities**

Council of the City of N.Y., *Report to the Committee on Finance and the Committee on Public Safety on the Fiscal 2018 Executive Budgets for District Attorneys and Special Narcotics Prosecutor*, May 22, 2017, at 3, http://council.nyc.gov/budget/wp-content/uploads/sites/54/2017/03/901-906-DA-and-OSNP-exec-1.pdf ...................................... 18

## PRELIMINARY STATEMENT

On June 24, 2009, a young man in his 20s or 30s, wearing a hooded sweatshirt and a goatee, robbed a Radio Shack store in Far Rockaway, Queens, at gunpoint.  Amended Complaint ("Am. Compl."), filed Oct. 13, 2017, Dkt. 19, ¶¶ 16, 18.  The two victims saw him run from the scene and escape.  *Id.* ¶ 18.  Police searched unsuccessfully in the neighborhood for such a man, and developed no suspect.  *Id.* ¶¶ 20-23, 32.

After a week, the matter was reassigned to Det. Raul Lopez.  *Id.* ¶ 31.  Lopez, along with Sgt. Brian Stamm, checked the precinct's parolee database and learned that a recent parolee, Plaintiff Ricardo Benitez, lived across the street from the Radio Shack.  *Id.* ¶¶ 34-35.  Lopez and Stamm created a grossly suggestive photo array designed to ensure that Benitez was identified: knowing that the two eyewitnesses had described a perpetrator wearing a hoodie and a goatee, the array showed Benitez, but none of the fillers, wearing a hoodie and a goatee; he also jumped out as the only one who was unshaven, had closely cropped hair, and appeared gaunt and sickly. *Id.* ¶¶ 36-39.  When eyewitness Bernadette Johnson predictably selected Benitez, Lopez and his colleagues had a basis—falsely contrived—to make an arrest.  *Id.* ¶¶ 40, 44.

When Lopez and Stamm went to arrest Benitez, they found he could not possibly be the perpetrator.  The eyewitnesses had described a *young* man *running* from the scene, but Benitez was much older, limped, used a cane, and suffered from hip necrosis, asthma, and chronic obstructive pulmonary disease.  *Id.* ¶¶ 45-50.  Further, upon searching Benitez's apartment, Lopez and Stamm found no gun, money, or clothing worn by the perpetrator.  *Id.* ¶ 51.  Yet this did not deter Lopez and his colleagues from continuing to build a false case against Benitez.

Knowing Benitez was innocent, Lopez and Sgt. Frank Libretto created a lineup equally calculated as the photo array to produce a false identification.  *Id.* ¶¶ 54-55.  Benitez was the only person in the lineup whose image Johnson had just viewed in the photo array.  *Id.* ¶ 59.  He

1

appeared 15-20 years older than the fillers and was much darker-skinned. *Id.* He was unshaven and disheveled whereas the others were in fact, and appearance, clean-cut police officers. *Id.* He was noticeably thinner than the fillers and, unlike them, appeared sickly. *Id.* ADA Tina Grillo was present and permitted this lineup to take place even though she implored Lopez—who refused—to make it less suggestive. *Id.* ¶¶ 59, 92.

Knowing Johnson's identification was false, the Individual Defendants initiated Benitez's prosecution anyway by forwarding their false evidence to prosecutors. *Id.* ¶ 61. Lopez signed the complaint. *Id.* ¶ 62. At arraignment, Benitez was detained without bail. *Id.* ¶ 65. Convicted at trial based upon Johnson's testimony, he spent more than 5 ½ years incarcerated until his conviction was overturned on appeal and he was acquitted at his retrial. *Id.* ¶¶ 69-76.

This civil rights action seeks to hold the three police officers and ADA Grillo personally liable for their involvement in manufacturing the photo array and lineup "evidence" and causing it to be used to initiate Benitez's prosecution. The action also seeks to hold the City of New York liable, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because Benitez's conviction also was caused by constitutional violations by prosecutors at trial—suppression of *Brady* material, deliberate use of false or misleading testimony, and gross misconduct in summation—which in turn resulted from the unlawful, office-wide policies of the Queens County District Attorney's Office, a New York City agency.

Defendants, relying on Fed. R. Civ. P. 12(b)(6), seek to dismiss this action on the basis that the Amended Complaint fails to state a claim. But this Complaint, on its face, plainly states valid claims. To overcome this, Defendants proffer factual material that is not even in the Complaint, but which they rip out of context from the trial record.

Defendants' tactic violates hornbook law. Pre-answer Rule 12(b)(6) motions are required

to focus on the sufficiency and plausibility of the facts contained within the four corners of the complaint, not material that a movant self-servingly selects from a complex trial record.  Even accepting Defendants' "facts," their motion, which repeatedly ignores or distorts Plaintiff's actual claims, lacks any merit.  Meanwhile, Defendant City of New York, in opposing Plaintiff's *Monell* claim, ignores binding Second Circuit case law that squarely rejects their defenses.  For the reasons set forth below, Defendants' motion should be denied.

## STATEMENT OF FACTS

A Rule 12(b)(6) motion concerns the contents of the pleadings.  Benitez relies on the facts alleged in his Amended Complaint.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A Rule 12(b)(6) motion "should be granted only when 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Ford v. Reynolds*, 326 F. Supp. 2d 392, 397 (E.D.N.Y. 2004) (Johnson, D.J.) (quoting *Green v. Maraio*, 722 F.2d 1013, 1015-16 (2d Cir. 1983)).

Because "[a] motion brought under Rule 12(b)(6) challenges only the legal feasibility of a complaint," *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (internal quotation marks omitted), "the district court is normally required to look only to the allegations on the face of the complaint," *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

Under an exception to this rule, a court may consider documents that are *attached* to or are "'integral' to the complaint"—that is, if "the complaint relies heavily upon [the documents']

terms and effect." *Goel*, 820 F.3d at 559 (internal quotation marks omitted).  This exception generally applies only in contract or commercial fraud actions.  *See id.*; *Roth*, 489 F.3d at 509.  In such a rare case, the court may consider the documents "'only to determine *what* [they] stated,' and '*not to prove the truth of their contents*.'"  *Id.* at 509 (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)) (emphases in *Roth*).  Referencing "a separate litigation" in a complaint "does not open the door to consideration, on a motion to dismiss, of any and all documents filed in connection with that litigation."  *Goel*, 820 F.3d at 560.

If, on a Rule 12(b)(6) motion, a court decides to consider "matters outside the pleadings," then "the motion must be treated as one for summary judgment," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  However, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."  *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303-04 (2d Cir. 2003) (Sotomayor, then-C.J.) (quoting *Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000)).

If the court decides to consider summary judgment based upon a Rule 12(b)(6) motion, it should provide the plaintiff with the opportunity to submit evidence extrinsic to the complaint in support of his claim.  *See Sahu v. Union Carbide Corp.*, 548 F.3d 59, 69 (2d Cir. 2008).

In this case, police reports and the trial transcript are not attached to the complaint and are not integral to it.  Nor is this a contract or commercial fraud action based upon the construction of a single document.  Rather, this is a wrongful conviction case that turns on the credibility of witness testimony from a variety of sources.  Moreover, Defendants rely on their selective, extra-record evidence for the "truth," rather than simply for the non-hearsay fact that it exists.  For all of these reasons, this Court should decline to consider such evidence.  Should the

Court decide to do so anyway and treat this as a summary judgment motion, Plaintiff should be
afforded his right to submit his evidence supporting his claims.

## ARGUMENT

## POINT I

## BENITEZ HAS STATED A PLAUSIBLE EVIDENCE-MANUFACTURING CLAIM

**A.      Benitez Has Alleged Plausible Facts Sufficient to Support His Claim**

To state a legally sufficient fair trial claim based on evidence fabrication, a plaintiff must
plausibly allege that: (1) an investigating official (2) fabricated information (3) likely to
influence a jury's verdict and (4) forwarded it to prosecutors, (5) resulting in a deprivation of the
plaintiff's life, liberty, or property.  *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d
Cir. 2016) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).  An
evidence-fabrication claim is complete once the investigating official forwards the fabricated
evidence to prosecutors and the plaintiff is deprived of liberty—the false evidence need not be
admitted, or admissible, at trial to be "likely to influence a jury," nor does the claim require that
the evidence result in a conviction.  *Ricciuti*, 124 F.3d at 127, 130; *Garnett v. Undercover
Officer C0039*, No. 1:13-CV-7083-GHW, 2015 WL 1539044, at *8 (S.D.N.Y. Apr. 6, 2015),
*aff'd*, 838 F.3d 265.  However, conviction at trial and subsequent imprisonment are reasonably
foreseeable, consequential damages for which the defendant who fabricates evidence may be
held liable.  *See, e.g.*, *Bermudez v. City of New York*, 790 F.3d 368, 376 (2d Cir. 2015) (dismissal
of evidence-fabrication claim not appropriate because defendants' fabrication and forwarding of
false evidence may have remained a proximate cause of the plaintiff's conviction and
incarceration); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 398 (S.D.N.Y. 2016) (same).

As set forth above, pp. 1-2, *supra*, and at Am. Compl. ¶¶ 77-81, Plaintiff alleges that
Lopez, together with his three co-defendants, manufactured false photographic and corporeal

identification evidence as well as a false DD5 claiming he had first received information about Benitez via a "tip," handed this fabricated "evidence" to prosecutors knowing it contained the type of information a reasonable jury would be likely to rely upon, and thereby caused Benitez to be prosecuted and to lose his liberty at his arraignment.  These facts make out all the elements of Benitez's claim.  Benitez then alleges further, consequential damages:  his ongoing detention, conviction, and further imprisonment.  Am. Compl. ¶¶ 81-82; *see also id.* ¶¶ 70-76.

**B.    Defendants Misconstrue Benitez's Claim and Improperly Rely on Materials Outside of the Pleadings**

**1.    Benitez's Claim Is Based Upon the Fabrication, During the Investigative Stage, of False Evidence and Its Use to Cause His Deprivation of Liberty Following His Arraignment; Whether Such Evidence Was Also Introduced at Trial Is Irrelevant to His Claim**

Defendants contend that Benitez "has not plead that any of the evidence caused him to suffer harm," since neither the fabricated identifications nor the fabricated tip were admitted at trial, Defs. Mem. 6-7, 10.  This is untrue.  Benitez has pled that he was prosecuted and incarcerated, long before trial, due to the fabricated evidence, and that this incarceration continued for more than 5 ½ years.  As for the trial, the tip evidence *was* admitted, and Johnson, the witness whom Defendants improperly influenced to falsely identify Benitez, testified against him.  *See* Am. Compl. ¶¶ 70, 105-111; *People v. Benitez*, 120 A.D.3d 705 (2d Dep't 2014) (reversing Benitez's conviction due to prosecution's improper reliance on the tip evidence).

Defendants correctly point out that Benitez must plead that their wrongdoing proximately caused his injuries, Defs. Mem. 7, but Benitez *has* done so:  he alleges that their wrongdoing caused his conviction and his nearly six-year imprisonment.  Am. Compl. ¶¶ 1, 71-76, 79-82. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1197 (2d Cir. 1996) (on motion to dismiss, court "must read the complaint liberally, drawing all inferences in favor of the pleader"); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  Whether some superseding cause

broke the chain of causation and cuts off Benitez's entitlement to damages at some point after his arraignment involves a potential affirmative defense, which we discuss in the next section.  If Benitez has not adequately pled causation, leave to amend should be granted.[1]

### 2.   Superseding Causation Is a Jury Question and, In Any Event, Defendants Have Not Established It as a Matter of Law

The gravamen of Plaintiff's claim is that he was denied his right to a fair trial by the manufacturing of false evidence that was used to initiate his prosecution and deprive him of his liberty before any trial occurred.  This constitutional tort, long recognized by the Second Circuit, *see Zahrey v. Coffey*, 221 F.3d 342, 351-52 (2d Cir. 2000); *Ricciuti*, 124 F.3d at 130, is aimed at punishing the government official for his act of fabrication.  It is distinct from the due process claim at issue in *Wray v. City of New York,* 490 F.3d 189 (2d Cir. 2007), and the other cases upon which Defendants rely, *see* Defs. Mem. 7-9, which targets the use *at trial* of unduly suggestive identification evidence.  Defendants have not yet even pled, let alone proven, their affirmative defense of superseding cause, which, in any event, would present a quintessential jury issue.  *See Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir. 2007); *Kerman v. City of New York*, 374 F.3d 93, 127 (2d Cir. 2004).

In *Wray*, the Second Circuit held that a court's pretrial decision to admit identification testimony may be a superseding cause of the damage done at trial.  However, this is so only if the court rules with complete knowledge of all the relevant circumstances and is uninfluenced by the wrongdoer's misconduct.  *See Wray*, 490 F.3d at 195 (noting there was no evidence that either the prosecution or judge were misled).  *Wray* does not apply here for two reasons.

---

[1] *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (reversing district court's dismissal of the complaint without leave to amend); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (following 12(b)(6) dismissal, plaintiff's request to amend "should ordinarily be granted").

First, as explained above, Benitez's claim is based not upon the use of identification evidence at *trial*, but rather *the fabrication of such evidence, and the injury it caused, long before the trial.*  Benitez's conviction and subsequent imprisonment constitute additional damages that foreseeably resulted from the fabrication of evidence, but are not integral to his claim.

Second, unlike in *Wray* and *Hicks v. City of New York*, 232 F. Supp. 3d 480 (S.D.N.Y. 2017), upon which Defendants also rely, the hearing judge here lacked full knowledge of the salient facts; to the contrary, he was misled.  He was told falsely that Johnson observed the perpetrator for *five minutes*, when she actually observed him for mere seconds.  Am. Compl. ¶ 99.  The court was also unaware that prosecutors eager to win the hearing had improperly induced Johnson to change her description of the robber from a young man who ran from the store to an older man who fit Benitez's appearance and limped.  *Id*. ¶¶ 95-98.  Further, the court did not consider the impact upon Johnson's "memory" of the suggestive photo array and lineup. *See id.* ¶ 101; *Young v. Conway,* 698 F.3d 69, 78 (2d Cir. 2012) (eyewitness's recollection must be demonstrated to be "uninfluenced by the pretrial identifications").  Finally, the court did not know that ADA Grillo, after viewing the lineup, had protested its unfairness to Det. Lopez, but the two of them had proceeded with it unchanged.  *See* Am. Compl. ¶¶ 92-93, 102.  In short, the hearing court did not make a fully-informed, "independent" decision to admit the identification testimony at trial.  The defense of superseding causation does not apply.

Defendants next contend that the decision by *prosecutors* to go forward with the case based upon Bernadette Johnson's testimony also was an "independent," superseding cause.  They point to a hearing transcript dated June 14, 2010, *see* Defs. Mem. 7 n.4 (citing Ex. G, at 3), which merely shows that a prosecutor had decided not to use the lineup and was aware of the photo array.  This transcript, which the court should not consider anyway in deciding a Rule

12(b)(6) motion, does not establish superseding cause.

First, the transcript does not prove that Johnson's certainty that she had identified the right person, which led prosecutors to continue with the case, was uninfluenced by the two highly-suggestive identification procedures. On this basis, the Second Circuit rejected a similar proximate cause defense in *Bermudez v. City of New York*, 790 F.3d 368, 375-76 (2d Cir. 2015).

Second, Defendants have not even identified the specific prosecutors who made any "decision" to continue with the case, let alone proven they had full knowledge of the fabrication of the tip and identification evidence. In *Hicks*, by contrast, prosecutors "were well aware of the problems" with the identifications and were not misled. *Hicks*, 232 F. Supp. 3d at 494.

Third, the chain of causation is not broken when a police officer "acts in concert with an equally culpable ADA" who knows "the fabricated evidence to be so." *Lopez v. City of New York*, 105 F. Supp. 3d 242, 250 (E.D.N.Y. 2015) (Cogan, D.J.). It would be "bizarre" to find that an investigator who "foists fabricated evidence on an unsuspecting ADA . . . can be liable . . . , but that if he acts in concert with an equally culpable ADA to put that evidence before the jury, he cannot." *Id.* (citing *Zahrey*, 221 F.3d at 352).

Fourth, even if the prosecutor is not an accomplice or co-conspirator, his passivity in permitting a case to continue once the investigator's wrongdoing surfaces doesn't turn aside and interrupt the ordinary chain of events, but is a reasonably foreseeable, additional link in it, and thus is not a superseding cause. *See Zahrey*, 221 F.3d at 351-52; *accord Kerman*, 374 F.3d at 127. Defendants who fabricate identification evidence "cannot hide behind the decision of the DA to prosecute." *Blake v. Race*, 487 F. Supp. 2d 187, 211 (E.D.N.Y. 2007) (Bianco, D.J.). Plaintiff is entitled at this stage to the inference that Defendants could foresee that the strong institutional pressure at the Queens D.A.'s Office to win would lead the office to continue this

prosecution even knowing of their misconduct.  *See, e.g.,* Am. Compl. ¶¶ 109-123.

Finally, Defendants contend that Benitez's "allegation that the TIPS DD5 was fabricated . . . makes no sense" because the DD5 "was generated on June 30, 2009, with the subsequent photo array and line-up conducted on July 3rd."  Defs. Mem. 10.  However, the premise of their plausibility challenge is factually incorrect.  While Lopez claimed he received the tip on June 30, 2009, his DD5 documenting it is dated July 3—the same day that the photo-array and lineup identifications occurred.  *See* Defs. Mem., Ex. B.  This fact adds to the plausibility of Benitez's claim that Lopez fabricated the tip to shore up the weak identification evidence he had helped to fabricate.  That police officers sometimes fabricate evidence is an unfortunate, and known, fact of life.  *See, e.g.*, *Colon v. City of New York*, No. 09-CV-8, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009) (Weinstein, D.J.) (noting "evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department").

## <u>POINT II</u>

## <u>BENITEZ HAS STATED A PLAUSIBLE MALICIOUS PROSECUTION CLAIM</u>

To establish malicious prosecution, a plaintiff must show that: (1) the defendants initiated a criminal proceeding, (2) the proceeding ended in the plaintiff's favor, (3) there was no probable cause to bring charges, and (4) the defendants acted with actual malice.  *Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994).  "A lack of probable cause generally creates an inference of malice." *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003).  For a federal claim, the plaintiff must also have suffered a deprivation of liberty.  *See Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003).  In this case, Defendants appear to be contesting only probable cause and initiation.

### A.    **Benitez Has Adequately Pled Lack of Probable Cause and Initiation**

### 1.    **Lack of Probable Cause**

The Amended Complaint easily makes out lack of probable cause.  It alleges that the

entire case—the anonymous tip, as well as the photo array and lineup identifications—was fabricated.  There was *no* additional evidence implicating Benitez, hence no probable cause.

Defendants contend that the indictment created a presumption of probable cause that the Amended Complaint fails to rebut.  Defs. Mem. 11-13.  This presumption "may be overcome by evidence establishing that the police witnesses 'have not made a complete and full statement of facts[,] that they have misrepresented or falsified evidence[,] or otherwise acted in bad faith.'" *Boyd*, 336 F.3d at 76 (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82-83 (1983)); *see Fappiano v. City of New York*, No. 01-CV-2476, 2015 WL 94190, at *11 (E.D.N.Y. Jan. 7, 2015) (Townes, D.J.) ("[F]raud, perjury, the suppression of evidence or other police conduct undertaken in bad faith . . . strip[] an indictment of its presumptive force[.]" (internal quotation marks omitted)).  Here, Defendants withheld from the grand jury that the identifications were fabricated, that Benitez's physical condition and appearance ruled him out as the robber described by the eyewitnesses, and that the consent search revealed no evidence to link Benitez to the crime.  Am. Compl. ¶ 67.  These allegations, if proven, easily rebut the presumption.

Defendants argue the above allegations are "irrelevant," because "there is no duty to present exculpatory items to the Grand Jury."  Defs. Mem. 12.  But the Amended Complaint alleges not *merely* the withholding of exculpatory evidence, but also the knowing use of fabricated evidence to deceive the grand jury.  Moreover, the exculpatory evidence that was withheld was not marginal, but decisive:  *it thoroughly negated probable cause.  See, e.g.*, *Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010); *Marshall v. Sullivan*, 105 F.3d 47, 55 (2d Cir. 1996); *Colon*, 60 N.Y.2d at 83.[2]

---

[2] The presumption of probable cause also is rebutted if the detective and the prosecutor "colluded" to mislead the grand jury.  *DaCosta v. Tranchina*, No. 15-CV-5174, 2017 WL 6372710, at *5 (E.D.N.Y. Dec. 12, 2017) (Weinstein, D.J.).

Defendants suggest illogically that Johnson's claim that she saw the perpetrator in a car the day before she first identified Benitez somehow makes her identifications reliable. *See* Defs. Mem. 10, 12, 20. This allegation is outside the pleadings and not properly before this Court. It also makes no sense. Johnson's identification of Benitez as the robber who she initially claimed was in his 20s or 30s and ran from the store was not made more reliable by her identification of Benitez as the man she saw in the car, an identification that was just as likely to be mistaken. *See, e.g., DaCosta v. Tranchina*, No. 15-CV-5174, 2017 WL 6372710, at *8 (E.D.N.Y. Dec. 12, 2017) (Weinstein, D.J.) ("Study after study demonstrates that eyewitness recollections are highly susceptible to distortion by postevent information or social cues." (quoting *Perry v. New Hampshire*, 565 U.S. 228, 264 (2012) (Sotomayor, J., dissenting))). Anyway, it is a jury question whether the false identifications influenced Johnson or whether she would have identified Benitez anyway.

Finally, Defendants argue that somehow Johnson's identification of Benitez four times—from a photo, at the lineup, at the independent source hearing, and at trial—protects them from liability for the first two procedures. *See* Defs. Mem. 12. But this is classic bootstrapping. The repetition did not establish reliability but only that the two fabricated identifications corrupted Johnson's memory. The reasons for these identifications are fact questions, not questions of law subject to resolution through a motion to dismiss.

## 2. Initiation

A defendant initiates a criminal proceeding by forwarding evidence to—or withholding evidence from—a prosecutor for that purpose, as well as by signing a criminal complaint. *See Ricciuti*, 124 F.3d at 130-31. Fabricating evidence knowing it will be used to initiate a prosecution also establishes the element. *See id.*; *Manganiello*, 612 F.3d at 163.

Here, Plaintiff alleges that Defendant Lopez manufactured the tip evidence, and

12

Defendants Lopez, Stamm, Libretto, and Grillo manufactured the photo and/or the identification evidence, knowing such evidence would be used to initiate Plaintiff's prosecution, and that it was so used after Lopez and Grillo forwarded it to the prosecution.  Am. Compl. ¶¶ 61, 63.  Lopez then signed the Criminal Court complaint.  *Id.* ¶ 62.  Hence, initiation is made out.

**B.      No Superseding Cause Cut Off the Individual Defendants' Liability**

Echoing their argument in the evidence-fabrication context, Defendants contend that the trial judge and the prosecution exercised independent judgment that broke the chain of causation and cut off Defendants' liability for malicious prosecution.  This argument fails as a matter of law, as the tort was complete when the prosecution was initiated and Benitez lost his liberty; again, this defense really relates to the *extent* of the resulting damages.  As shown above, a superseding-cause defense is intensely factual and requires resolution by a jury.  Nothing in the Amended Complaint permits the court to decide this affirmative defense, which Defendants have not yet even pled, as a matter of law.  The selective, extraneous "evidence" that Defendants proffer should not be considered and, in any event, fails to make out their asserted defense.

<u>**POINT III**</u>

<u>**THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**</u>

A state actor "is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act."  *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (internal quotation marks omitted).  Here, Defendants do not dispute the first element.  As for the second prong, there is no qualified immunity where a detective "misrepresented the evidence to the prosecutors, or failed to pass on material information, or made statements that were false, and engaged in such misconduct knowingly."  *Manganiello*, 612 F.3d at 165.  "No defendant officer

is entitled to qualified immunity when alleged fabrication of evidence is key to the case." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 458 (E.D.N.Y. 2015) (Weinstein, D.J.).

## POINT IV

## BENITEZ HAS STATED A PLAUSIBLE MUNICIPAL-LIABILITY CLAIM

The Amended Complaint alleges that Queens prosecutors substantially contributed to Benitez's conviction by violating his constitutional right to a fair trial.  They did so by coaching Bernadette Johnson to change her original description of the robber (in his 20s, ran from store) so that her later description (in his 50s, limping, sunken cheeks, brown eyes) matched Benitez, Am. Compl. ¶¶ 95-97, 112; by failing to correct her false hearing testimony that she had observed the perpetrator for "five minutes," when they knew she had done so for mere seconds, *id.* ¶ 99; by violating *Brady* by withholding that Det. Lopez had persisted with the blatantly suggestive lineup over ADA Grillo's objections, *id.* ¶¶ 92-94, 101-103, 112; and by making false arguments in summation about the alleged anonymous tip, *id.* ¶¶ 109-110.  These prosecutors are immune from personal suit, but no immunity protects the City of New York from liability to the extent that the City's unlawful policies, customs, or practices concerning the training, supervision, and discipline of prosecutors caused the prosecutors' misconduct in this case.  This Court should reject the City's contrary arguments, which ignore binding Circuit precedent.

### A.    The Law Governing *Monell* Liability

"[A] local government is liable under § 1983 for its policies that cause constitutional torts." *McMillian v. Monroe Cty.*, 520 U.S. 781, 784 (1997); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693 (1978).  One way to establish *Monell* liability is to show that a policymaking official was on notice of, but was deliberately indifferent to, constitutional violations caused by subordinates; the policymaker's "acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011)

(quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (Sotomayor, then-C.J.)); *see Connick v. Thompson*, 563 U.S. 51, 61-62 (2011); *City of Canton v. Harris*, 489 U.S. 378, 395 (1989). "Policymakers" are those "officials . . . who speak with final policymaking authority" with respect to "the action alleged to have caused the particular constitutional or statutory violation at issue." *McMillian*, 520 U.S. at 785.

**B.     The City May Be Held Liable Under § 1983 Based on the Queens D.A.'s Actions (or Inaction) as a Final Policymaking Official**

The City argues that it may not be held liable for policies of the Queens D.A. that caused the fair trial violations here because such policies are State, not municipal, functions. However, binding Second Circuit authority—which the City ignores—is to the contrary.

In *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992), the Second Circuit squarely held that the City could be held liable for a *Brady* violation that resulted from the Brooklyn D.A.'s deliberate indifference to the need to adequately train, supervise, and discipline prosecutors regarding *Brady* compliance. The Court reasoned that, under New York law, while a D.A. acts for the State in the prosecution of an individual case, he is a City policymaker when acting in his administrative or managerial function to train, supervise, and discipline prosecutors regarding *Brady* compliance; therefore, the City may be held liable if his policies cause a criminal defendant to be denied his constitutional right to a fair trial. *See id.* at 301 (citing *Gentile v. Cty. of Suffolk*, 926 F.2d 142, 152 n.5 (2d Cir. 1991)).

Following the Supreme Court's seminal decision in *McMillian*, the Second Circuit, in *Myers v. County of Orange*, 157 F.3d 66 (2d Cir. 1998), reaffirmed and broadened its holding in *Walker.* Under *McMillian*'s analysis for determining whether a policymaker acts on behalf of a State or a locality for *Monell* purposes, the law of the state in question largely controls, consistent with principles of federalism. *See McMillian*, 520 U.S. at 786, 794-95. Applying

*McMillian*, the *Myers* Court exhaustively analyzed New York law and explicitly reaffirmed that New York's D.A.s "are generally presumed to be local county officers, not state officers," with one "narrow exception": they are state policymakers when making "individual determinations about whether to prosecute violations of state penal laws." *Myers*, 157 F.3d at 76-77.  The Court went on to hold that Orange County had properly been held liable, not merely for a personnel policy as in *Walker*, but for an *office-wide prosecutorial policy* not to pursue cross-complaints, which violated cross-complainants' rights to equal protection.

Significantly, New York State's own appellate courts have also held, after *McMillian* and consistent with *Walker* and *Myers*, that localities may be held liable for policies of their D.A.s that cause constitutional violations, including *Brady* violations, *see Ramos v. City of New York*, 285 A.D.2d 284, 303 (1st Dep't 2001), and malicious prosecutions, *see Johnson v. Kings Cty. Dist. Attorney's Office*, 308 A.D.2d 278, 295-96 (2d Dep't 2003).

The above case law is binding upon this Court.  A district court "must follow the law as interpreted by the Court of Appeals." *Isufi v. Prometal Constr., Inc.*, 927 F. Supp. 2d 50, 52 (E.D.N.Y. 2013) (Weinstein, D.J.).  Only where an intervening decision of the U.S. Supreme Court would "almost inevitably" require the Circuit Court to reverse its own precedent may a district judge disregard it. *United States v. Emmenegger,* 329 F. Supp. 2d 416, 429 (S.D.N.Y. 2004) (Lynch, then-D.J.).  Even the Second Circuit may not "overrule" its own precedent unless it sits *en banc*. *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 488 (2d Cir. 2011).

The Supreme Court's decision in *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009), does not "almost inevitably" require the Second Circuit to reverse its precedent.  *Van de Kamp* involves not the issue decided in *Walker* and *Myers*—whether a *municipality* may be held liable for a D.A.'s office-wide policies—but rather the distinct question of whether a D.A. has

16

*individual immunity* from suit for such policies.  Municipalities, unlike individuals, do not enjoy absolute, qualified, or any other immunity.  *See Owen v. City of Independence*, 445 U.S. 622, 657 (1980).  Significantly, *Owen* recognizes, based upon the legislative history of Section 1983 as well as policy reasons, that municipalities *should* be liable for compensatory damages, even while individual policymakers are immune.  *See id.* at 650-56.  The issue of municipal liability decided in *Walker* and *Myers* (and *McMillian*) simply wasn't before the Court in *Van de Kamp*. The district court's decision in *Bellamy v. City of New York*, No. 12 Civ. 1025, 2017 WL 2189528, at *38 (E.D.N.Y. May 17, 2017) (Donnelly, D.J.), upon which the City relies, doesn't explain how *Van de Kamp* "overrules" *Walker* and *Myers*.  Indeed, it doesn't analyze these cases at all.[3]

Significantly, in the *Van de Kamp* case itself, after the Supreme Court dismissed the personal-capacity claims, the Ninth Circuit held that the City of Long Beach *could still be held liable*.  *See Goldstein v. City of Long Beach*, 715 F.3d 750, 762 (9th Cir. 2013).  Pointing out the distinction between individual immunity and municipal liability, the Court reasoned that *Van de Kamp*'s "prosecutorial immunity inquiry . . . is a federal question that will have a consistent answer nationwide," while *McMillian*'s "state-local determination . . . depends on a careful and thorough analysis of state constitutional and statutory provisions, and will vary from . . . State to State."  *Id.* at 760 (internal quotation marks omitted).  Several district courts agree.  *See, e.g.*, *Jovanovic v. City of New York*, No. 04 Civ. 8437, 2010 WL 8500283, at *16 n.12 (S.D.N.Y. Sept. 28, 2010) ("*Van de Kamp* did not address *Monell* liability . . . ."); *Johnson v. Louisiana*,

---

[3] The *Bellamy* decision is now on appeal to the Second Circuit, where the National Association of Criminal Defense Lawyers, the New York State Association of Criminal Defense Lawyers, the Innocence Network, and the Innocence Project have filed an amicus brief urging the Court to correct the erroneous opinion.  *See Bellamy*, 2017 WL 2189528, *appeal docketed*, No. 17-1859 (2d Cir. June 13, 2017).

No. 09-55, 2010 WL 996475, at *11-13 (W.D. La. Mar. 16, 2010) (finding that *Van de Kamp* did not alter municipal-liability doctrine).

The City also relies on *Jones v. City of New York*, 988 F. Supp. 2d 305 (E.D.N.Y. 2013) (Weinstein, D.J.), but misconstrues it. *Jones* did not hold that *Van de Kamp* overrules *Walker* and *Myers*. While the *Jones* court, in *dictum*, questioned the wisdom of the Second Circuit's decisions, its *holding* dismissing the *Monell* claim turned on the narrower, entirely factual ground that the *pro se* plaintiff[4] had failed to allege any "long and persistent history of feckless training and discipline practices regarding personnel *that might give rise to municipal liability*." *Id.* at 317 (emphasis added) (citing *Gentile*, 926 F.2d at 152 n.5). Indeed, recognizing the continuing viability of the Second Circuit case law he had questioned, Judge Weinstein later *upheld* a virtually identical claim against the City. *See Bailey*, 79 F. Supp. 3d at 453-54. This time, Judge Weinstein ruled, the plaintiff had demonstrated "a possible pattern and practice by the District Attorney . . . in violation of the Constitution" and, refusing to allow the *Monell* issue to be "swept under the rug," he denied the City's motion. *Id.* at 454 (citing *Collins v. City of New York*, 923 F. Supp. 2d 462, 478 (E.D.N.Y. 2013) (Block, D.J.)).[5] This Court should not let

---

[4] An attorney, Alan Nelson, was appointed to represent Jones for purposes of the motion to dismiss, but the complaint itself was filed by the prisoner-plaintiff *pro se.*

[5] Judge Weinstein's chief reservation about the *Walker* line of cases is that, in his view, "[t]he City cannot control or intervene in" its D.A.s' practices. *Jones*, 988 F. Supp. 2d at 314. However, as the final policymaker for the management of a local D.A.'s office, the D.A. represents, and binds, "the City" just as surely as the Mayor, the City Council, and a Borough President may do for other functions over which they exercise authority as final policymakers. *See, e.g.*, *Myers*, 157 F.3d at 76; *Walker*, 974 F.2d at 301. Also, as this Court knows from personal experience, the five D.A.s in New York City, as well as the Special Narcotics Prosecutor, receive virtually their entire budget from the City and must appear each year before the City Council to defend their policies, priorities, and budgetary allocations. *See* Council of the City of N.Y., *Report to the Committee on Finance and the Committee on Public Safety on the Fiscal 2018 Executive Budgets for District Attorneys and Special Narcotics Prosecutor*, May 22, 2017, at 3, http://council.nyc.gov/budget/wp-content/uploads/sites/54/2017/03/901-906-DA-and-OSNP-exec-1.pdf. Through this process, the "City" exercises far more influence over the D.A.'s policies than does New York State.

an equally reprehensible pattern and practice of the Queens D.A. be "swept under the rug" either. Just as *Walker* and *Myers* bound Judge Weinstein after *Van de Kamp*, they bind this Court.

## C.     Benitez Has Plausibly Pled an Underlying Fair Trial Violation

The City contends that Benitez has not adequately pled any constitutional violation that a custom, policy, or practice of the Queens D.A. could have caused.  But the Amended Complaint makes legally sufficient, plausible factual allegations that Queens prosecutors violated Benitez's constitutional right to a fair trial by suppressing *Brady* material, knowingly presenting or failing to correct false evidence, and deliberating making false or misleading summation arguments.

To ensure that the accused receives a fair trial, *Brady* requires the prosecution to disclose all evidence that is favorable to the defense, whether exculpatory or impeaching, and that is "material" to the conviction.  *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (en banc).  Evidence is material "when there is 'any reasonable likelihood' it could have 'affected the judgment of the jury.'"  *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)).  Materiality and causation are issues to be resolved by the trier of fact.  *See United States v. Gaudin*, 515 U.S. 506, 512 (1995); *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012).

A prosecutor also violates a defendant's constitutional fair trial rights by knowingly presenting, failing to correct, or arguing false evidence.  *See Drake v. Portuondo*, 553 F.3d 230, 240 (2d Cir. 2009) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)); *Su v. Filion*, 335 F.3d 119, 126-27 (2d Cir. 2003).  Prejudice to the accused is "readily shown" in such cases, and "reversal is virtually automatic."  *Su*, 335 F.3d at 127 (internal quotation marks omitted).

Summation misconduct may deny due process when the prosecutor's improper statements "cause substantial prejudice to the defendant"; this inquiry requires courts to assess "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty

19

of conviction absent the improper statements." *United States v. Feliciano*, 223 F.3d 102, 123 (2d Cir. 2000) (quoting *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981)).  Prejudice caused by summation and non-summation misconduct must be considered "cumulative[ly]." *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 95 (2d Cir. 2014); *see, e.g.*, *Jenkins v. Artuz*, 294 F.3d 284, 294 (2d Cir. 2002) (Queens ADA's summation "sharpened the prejudice" caused by *Brady* violation).

Benitez contends that Queens prosecutors violated his constitutional right to a fair trial by using false testimony at the hearing on the admissibility of Johnson's in-court identification to mislead the court into allowing that testimony.  *See* p. 8, *supra*; Am. Compl. ¶¶ 95-103.  In addition, the prosecution failed to disclose that Det. Lopez had insisted on going forward with the lineup even after ADA Grillo told him it was blatantly suggestive.  Am. Compl. ¶¶ 92, 94. This evidence was favorable to the defense because it showed that Lopez intentionally influenced Johnson's identification testimony to enhance the "corrupting effect of the suggestive confrontation." *Brown v. Tracy*, 299 F. Supp. 2d 77, 79 (E.D.N.Y. 2004) (Gershon, D.J.) (internal quotation marks omitted); *see Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

Defendant City argues that Benitez had the opportunity to cross-examine Johnson at *trial*, *see* Defs. Mem. 22, but this ignores Benitez's actual claim that, but for the false testimony at the *hearing* that the prosecution elicited, the trial court would have suppressed Johnson's testimony and there would have been no trial.  *See* Am. Compl. ¶¶ 100, 103.  Moreover, the prosecution withheld at *both* the hearing *and* the trial that Lopez had insisted on conducting an egregiously suggestive lineup over the objection of an ADA.  Even had the hearing judge not suppressed Johnson's in-court testimony, this information was favorable to the defense under *Brady* because it exposed Lopez's bias and "undermine[d] the ostensible integrity of the investigation." *Kyles v.*

20

*Whitley*, 514 U.S. 419, 448 (1995).  Lopez, the case detective, handled key identification witness Johnson and all the other evidence.  *See* Am. Compl. ¶¶ 93, 102-03, 105-06.  If his integrity could not be trusted, the entire case was undermined.

Defendants counter that the lineup was not used at trial and the court "independently" ruled that Johnson could identify Benitez despite the lineup's suggestiveness.  *See* Defs. Mem. 20.  But, again, the court's decision was *not* independent, as it resulted from the prosecutor's corruption of the fact-finding process at the hearing.  Moreover, had defense counsel known of the Lopez-Grillo dispute, she could have decided to use the lineup (and the photo array) to show how Lopez had intentionally corrupted Johnson's "memory" and thus, in effect, the entire case. *See* Am. Compl. ¶ 93.  *Brady* material must be disclosed so that *defense counsel* can make the tactical decision about whether, and how, to use it.  *See DiSimone v. Phillips*, 461 F.3d 181, 195 (2d Cir. 2006) ("it was the prerogative of the defendant and his counsel—and not of the prosecution—to exercise judgment in determining whether the defendant should make use" of evidence favoring the defendant).

Benitez's fair trial claim also cites the trial prosecutor's misuse of the "tip" evidence. This misconduct was severe: the prosecutor elicited this hearsay evidence to prejudice the jury by suggesting that a second, anonymous witness had implicated Benitez; improperly argued in summation that the jury should consider such anonymous hearsay for the "truth," even though at most it could be legitimately considered only for its bearing on the course of the police investigation; and then added numerous false, incriminating details to the "tip" that Lopez had made up.  *See* Am. Compl. ¶¶ 105-111.  The prejudice was compounded when the trial judge overruled defense counsel's objections, thus "legitimiz[ing] the prosecutor's improper remarks" in the eyes of the jury.  *Benitez*, 120 A.D.3d at 706.

Defendants argue that the prosecutor's misconduct was harmless because the Appellate Division did not second-guess the jury's verdict and dismiss the case outright under its rarely-invoked weight-of-the evidence review, *see* Defs. Mem. 21-22, but this is absurd.  The Appellate Division reversed the conviction precisely because the misconduct *did* cause prejudice, leaving the guilt-or-innocence question to be decided by a second jury.  That jury, free of the same prosecutorial misconduct, *acquitted* Benitez.

**D.      Benitez Has Plausibly Pled that the Queens D.A. Was Deliberately Indifferent to the Need to Train, Supervise, or Discipline Prosecutors in Their Constitutional Obligations and that this Policy Caused Prosecutors to Violate Benitez's Constitutional Right to a Fair Trial**

Benitez makes a plausible case that prosecutors' violation of his constitutional right to a fair trial was substantially caused by the Queens D.A.'s longstanding policy of deliberate indifference to such violations.  In fact, "plausible" is an understatement.  The Amended Complaint cites overwhelming evidence of the D.A.'s unlawful policy of deliberate indifference: 118 reported cases of prior similar misconduct; the absence of any formal or known disciplinary procedure for addressing such misconduct; a history of failing to discipline prosecutors for such misconduct, indeed, a history of rewarding them for it; the promulgation of unlawful policies to coerce witnesses and suppress impeachment evidence; and a "win-at-all-cost" culture that the Office deliberately encouraged.  *See* Am. Compl. ¶¶ 116-123 and Ex. A.  The City's settlement of a case involving identical allegations as this one for $3.5 million, following extensive discovery that is documented in the cited Fordham Law Review article, further demonstrates the plausibility of Benitez's allegations.  *See id.* ¶ 122 and Ex. B; *see also, e.g.*, *Collins*, 923 F. Supp. 2d at 477-78 (denying motion to dismiss similar *Monell* claim involving the Brooklyn D.A.); *Bailey*, 79 F. Supp. 3d at 453-54 (same); *Babi-Ali v. City of New York*, 979 F. Supp. 268, 272-75 (S.D.N.Y. 1997) (denying motion to dismiss *Monell* claim involving Queens D.A.'s *Brady*

22

compliance policies); *Ramos*, 285 A.D.2d at 305-06 (denying dismissal of *Brady*-related *Monell* claim involving Bronx D.A.).

Faced with an overwhelming list of 118 cases in which courts have held that Queens prosecutors violated criminal defendants' *Brady* and related fair trial rights, Defendant City advances nitpicking arguments that, in the context of Plaintiff's overall showing, are an embarrassment.  For example, the City argues that *one case* on Benitez's list was decided only *in part* based on prosecutorial misconduct (which Benitez acknowledged, *see* Am. Compl., Ex. A ¶ 106), that another led to a lawsuit that was dismissed, and that some civil lawsuits cited in the Fordham Law Review article settled before any fact-finding at trial.  *See* Defs. Mem. 23-24 & n.6.[6]  But the two cases the City challenges are among *118* decisions, many of which, as our case summaries show, involved intentional misconduct, and none of which, according to Plaintiff's allegations, led to any discipline of the offending prosecutors.

"[D]eliberate indifference may be inferred where 'the need for more or better supervision to protect against constitutional violations was obvious,'" *Cash*, 654 F.3d at 334 (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)), "but the policymaker 'fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs,'" *id.* (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)).  Such "[a]n obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."  *Vann*, 72 F.3d at 1049; *see Amnesty Am.*, 361 F.3d at 128; *see also Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986) ("The fact that none of the

---

[6] Defendants complain that the law review article contains hearsay.  Defs. Mem. 24 n.6.  But a complaint, which need only make plausible factual allegations, may contain hearsay or other inadmissible evidence. *See Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123-24 (2d Cir. 1991).

[reported complaints] ha[ve] yet been adjudicated in favor of the claimant [i]s not

material . . . .").[7]

Defendants further protest that just five of the cases listed in Plaintiff's Exhibit A were

decided within four years of his 2010 trial, and that 12 post-date his conviction. *See* Defs. Mem.

23. But no case law requires that decisions documenting past misconduct be issued within four

years of the misconduct now alleged. To the contrary, the Second Circuit has stressed the

significance of a "long history" of a policymaker's deliberate indifference. *Gentile*, 926 F.2d at

152 n.5 (cited by *Jones*, 988 F. Supp. 2d at 317); *McCants v. City of Newburgh*, No. 14 CV 556,

2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014) (past claims "removed in time from the

instant action . . . simply evidences the City has allegedly long condoned police misconduct").

Here, District Attorney Brown came into office in 1989 already presented with an

astounding history of 33 appellate reversals for similar misconduct in just four years. The

reversals continued at a disturbing pace thereafter, as Exhibit A shows. Yet he did nothing to

deter prosecutors from continuing such violations. This was a continuous policy of condonation,

despite ample notice, by the same District Attorney, over many years. That just five decisions

were handed down in the four years preceding Benitez's trial was a statistical anomaly: in the

following year, four occurred. And post-incident complaints are relevant too, as they "shed

some light on what policies existed in the city on the date of an alleged deprivation of

constitutional right." *Bordanaro v. McLeod*, 871 F.2d 1151, 1167 (1st Cir. 1989).

Even one documented instance may put a policymaker on notice of an inherently obvious

---

[7] The City argues that lawsuits alone do not establish an unlawful policy or practice claim. Defs. Mem.
24 (citing cases). However, the cited cases concern the sufficiency of evidence to withstand summary
judgment, not the plausibility of a complaint sufficient to withstand a motion to dismiss. Moreover, as we
have shown, our claim here is based on much more than a handful of unsubstantiated civil lawsuits.

risk of injury.  *See Cash*, 654 F.3d at 334-39; *Amnesty Am.*, 361 F.3d at 129 (single "egregious"

incident enough); *Disorbo v. Hoy*, 74 F. App'x 101, 103-04 (2d Cir. 2003) (unpublished opinion)

(single incident).  In *Fiacco,* the Court of Appeals upheld a verdict against a municipality based

on testimony about just five prior police incidents over five years, where there was additional

evidence of lack of discipline and police department indifference.  *See* 783 F.2d at 329-330.  In

*Babi-Ali*, the court upheld a *Monell* claim where plaintiff cited just nine *Brady* violations by

Queens prosecutors over many years, most of which postdated plaintiff's conviction.  *See* 979

F. Supp. at 274; Complaint at ¶¶ 20, 49, *Babi-Ali*, 979 F. Supp. 268 (No. 92 CIV. 7957), 1992

WL 12653494.  Benitez's allegations of the Queen's D.A.'s deliberate indifference are more than

adequate at this stage.

## **CONCLUSION**

Defendants' Rule 12(b)(6) motion should be denied.  Should the Court decide to convert

the motion to one for summary judgment, Benitez should be granted leave to submit the factual

materials that prove his claims.

Respectfully submitted,

LAW OFFICES OF JOEL B. RUDIN, P.C.
Joel B. Rudin
Haran Tae
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
jbrudin@rudinlaw.com
htae@rudinlaw.com

*Attorneys for Plaintiffs*

DATED:       New York, New York
             January 4, 2018

25