# LAW OFFICES OF JOEL B. RUDIN, P.C.

CARNEGIE HALL TOWER
152 WEST 57TH STREET
EIGHTH FLOOR
NEW YORK, NEW YORK 10019

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@rudinlaw.com

JOEL B. RUDIN

HARAN TAE
JACOB "COBY" LOUP

GEORGE R. GOLTZER
(OF COUNSEL)

September 10, 2018

**By ECF**
Honorable Sanket J. Bulsara
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Benitez v. City of New York, et al.*
             Dkt. No. 17-cv-03827 (SJ)(SJB)

Dear Judge Bulsara:

      This is a letter-motion to compel Defendants to produce document discovery. On May 22, 2018, Plaintiff sent Defendants his First Set of Interrogatories and Requests for Production of Documents (Ex. A), and Defendants served their responses in July (Ex. B). After extensive discussions, the parties' disagreements have been substantially narrowed, as reflected in the email correspondence reproduced as Ex. C, but court intervention is necessary to resolve the remaining issues discussed below. As per agreement and court order, Defendants will produce documents they have already agreed to disclose by October 19. Plaintiff reserves the right to further move to compel should such production be incomplete.

## Document Request #5 (Bernadette Johnson Files)

      Bernadette Johnson was the sole eyewitness to identify Plaintiff as the perpetrator and her credibility, and the reliability of her in-court identification, were critical issues at trial. The prosecution bolstered her credibility by portraying her as a completely honest, "nice person" who was planning to go to law school and whose mother was in law enforcement. During criminal discovery, the Queens D.A. produced all but one police investigation report: DD5 #4.

      Plaintiff obtained this document (Ex. D) via subpoena during his parallel State Unjust Conviction Act litigation. It is what police term a "victimology" report and contains the results of a computer search for matters in which she was a criminal defendant or complainant.

      The DD5 reveals that, contrary to the prosecutor's portrayal of Johnson as so clean that she was contemplating attending law school, she had been arrested in 2003 for menacing her

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Sanket J. Bulsara
September 10, 2018
Page 2

uncle with a knife. Since the matter does not appear to be sealed, it presumably resulted in a conviction. This matter should have been timely disclosed to the defense so that it could have investigated it and used the results to impeach Johnson's credibility, including contradicting her own character testimony. *See United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002) (document that "could lead to admissible [impeachment] evidence" can constitute *Brady* material).

Additionally, DD5 #4 shows that Johnson made numerous complaints to the police, including the same precinct responsible for Plaintiff's arrest. These incidents should have been disclosed because they suggested an ongoing relationship with law enforcement authorities, a possible bias favoring them, and a motive to curry their favor. The defense was entitled to investigate these incidents and to develop them during cross-examination.

Plaintiff seeks production of the NYPD's and QDAO's underlying files pertaining to Johnson's 2003 knife possession/menacing arrest, and the four complaints she filed, so that Plaintiff can determine the full extent to which he was prejudiced by the suppression of this *Brady* impeachment material during the criminal trial. Such evidence will support Plaintiff's *Monell* claim alleging *Brady* violations by the prosecution caused by the deliberately indifferent policies of the Queens D.A. The materiality and causation elements of Plaintiff's claim requires a cumulative assessment of the impact of all the *Brady* violations. *See, e.g., Kyles v. Whitley,* 514 S.Ct. 419, 437 (1995). The material also is relevant to Johnson's present credibility.

### Document Request #8 (Personnel and Disciplinary Records of Individual Defendants)

Plaintiff seeks production of the individual defendants' personnel and disciplinary records. Defendants have agreed to produce the personnel records of all the defendants. As to the disciplinary records of the defendant police officers, Defendants have only agreed to produce "resumes" from the IAB, CCRB, and Central Personnel Index databases for *substantiated* allegations concerning acts similar to those alleged in the Amended Complaint and concerning honesty from 2000-2015. Defendants have categorically declined to disclose unsubstantiated allegations, any allegations predating Plaintiff's 2009 arrest by more than 10 years or post-dating Plaintiff's 2015 acquittal at retrial, and underlying investigative files.

For all substantiated allegations, Plaintiff seeks disclosure of the full underlying investigative files. The resumes that Defendants have agreed to produce contain virtually no details and would not permit Plaintiff to reasonably investigate or make full use of these incidents. Given the notoriously low rate at which the NYPD and CCRB substantiate allegations against police officers, any alleged misconduct that was substantiated is likely to be significant.

For unsubstantiated allegations concerning similar bad acts or dishonesty, Plaintiff agrees to defer production of the underlying files, as they may be substantial, but seeks production of the *closing reports* so that Plaintiff may identify which of the unsubstantiated allegations merit further investigation. Production of the resumes for these incidents alone would be virtually useless. Plaintiff agrees to receive this discovery pursuant to a protective order.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Sanket J. Bulsara
September 10, 2018
Page 3

Plaintiff is clearly entitled to this discovery under the law of this Circuit. A plaintiff in a § 1983 action is "presumptively entitled to discovery of documents on prior complaints" and the disciplinary histories of individual defendants "because it could yield relevant information." *Gibbs v. City of New York*, 243 F.R.D. 95, 96 (S.D.N.Y. 2007) (citing *King v. Conde*, 121 F.R.D. 180, 198 (E.D.N.Y. 1988) (Weinstein, D.J.)). The scope of such discovery includes not just a list of complaints, but also the underlying investigative files. *Young v. City of New York*, No. 10 CIV. 1701 RMB THK, 2010 WL 3938372, at *1 (S.D.N.Y. Oct. 7, 2010) (collecting cases); *see also Bridgeforth v. City of New York*, 286 F. Supp. 3d 629, 631 (S.D.N.Y. 2017) (ordering full disclosure of individual defendants' disciplinary files). So long as the allegations either implicate an officer's honesty, *see Brown v. City of New York*, No. CV 2008-5095 FB MDG, 2011 WL 4594276, at *2 (E.D.N.Y. Sept. 30, 2011) (Go, M.J.), or are not "wholly unrelated to the plaintiff's claims," *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (Matsumoto, M.J.), Plaintiff is entitled to their discovery, as it may lead to evidence demonstrating an officer's bad intent, pattern, or modus operandi, or impeaching the officer's credibility. *See Brown*, 2011 WL 4594276, at *2; *Pacheco v. City of New York*, 234 F.R.D. 53, 55 (E.D.N.Y. 2006) (Pohorelsky, M.J.) (citing *Ismail v. Cohen,* 899 F.2d 183, 188–89 (2d Cir.1990)).

Unsubstantiated allegations must also be disclosed. *See, e.g.*, *Barrett*, 237 F.R.D. at 41 ("an accusation against an individual need not be proven before the fact of that accusation can be disclosed"); *Bradley v. City of New York*, No. 04CIV8411RWSMHD, 2005 WL 2508253, at *1 (S.D.N.Y. Oct. 3, 2005) ("We emphatically reject defendants' contention that 'unsubstantiated' complaints should…not be ordered produced") (citations omitted); *Young v. City of New York*, No. 10 CIV. 1701 RMB THK, 2010 WL 3938372, at *1 (S.D.N.Y. Oct. 7, 2010) (collecting cases holding the same). This is because "even unsubstantiated complaints are useful to resourceful counsel as potential leads to other evidence, and therefore subject to production." *Gross v. Lunduski*, 304 F.R.D. 136, 146 (W.D.N.Y. 2014) (internal quotation marks and citation omitted); *Daniels v. City of New York*, No. 13 CIV. 6286 PKC, 2014 WL 325934, at *2 (S.D.N.Y. Jan. 27, 2014) (same).

Nor may allegations be categorically withheld on the basis of age, or because they post-date the incident underlying the lawsuit. *See Barrett v. City of New York*, 237 F.R.D. 39, 40-41 (E.D.N.Y. 2006) (Matsumoto, M.J.) (citations and quotation marks omitted).

Defendants should be ordered to produce the disciplinary records without redacting the names or contact information of the complainant or any witnesses, as Plaintiff's counsel is entitled to contact and interview them. *See Young*, 2010 WL 3938372, at *1 (collecting cases). Any privacy concerns may be adequately alleviated by an attorneys' eyes only confidentiality agreement. *See Brown*, 2011 WL 4594276, at *3; *Gibbs*, 243 F.R.D. at 96.

*In camera* review before production would also be inappropriate. Such review would place "a substantial burden on the Court" and defendants have not shown that it "would be a superior option to disclosure under a protective order." *Gibbs*, 243 F.R.D. at 96. *See also Daniels v. City of New York*, No. 13 CIV. 6286 PKC, 2014 WL 325934, at *2 (S.D.N.Y. Jan. 27, 2014)

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Sanket J. Bulsara
September 10, 2018
Page 4

("*in camera* review is not well suited" to such records because it would "require[] a court to make predictive judgments as to how a skilled plaintiff's lawyer might seek to use the document and then shift gears and determine whether the use would likely be permissible, given the age and similarity of events.").

Finally, disclosure as to acts of dishonesty on the job should not be limited as to time. As to similar acts, we agree to a time limit of 10 years before arrest, or 1999, but believe disclosure should be to the present. This is less than three years since Plaintiff's acquittal on the charges brought about by the defendants' fabrication of evidence and malicious prosecution.

### Document Request #9 (*Monell:* Personnel Records of QDAO Prosecutors)

In support of his *Monell* claim, Plaintiff seeks discovery of the personnel records of QDAO prosecutors who handled prosecutions in which courts found *Brady* or prejudicial discovery violations, the improper use of or failure to correct false or misleading testimony, and serious summation misconduct, especially the use of false, misleading, or inflammatory arguments, or the use of evidence for an impermissible purpose—the very categories of misconduct that occurred in this case. This discovery is necessary to permit Plaintiff to fully prove his claim that the Queens D.A., as a municipal policymaker with respect to the management of his agency, failed to adequately discipline his staff and was deliberately indifferent to such misconduct, thereby creating an anything-goes atmosphere leading to the misconduct that occurred in this case. The personnel records are likely to show that such prosecutors, rather than be disciplined, were praised and promoted with indifference to their misconduct and, in some cases, because of their ill-gotten successes.

Exhibit A to the Amended Complaint lists 118 such cases, beginning in 1985 and continuing through present. Plaintiff has agreed to forego discovery related to judicial decisions predating District Attorney Brown's ascension to office in 1991. (Such decisions are still relevant as notice to Mr. Brown, who was an Appellate Division Justice during this period, of the scope of the misconduct problem, but we are waiving production of the personnel records because Mr. Brown was not in office and thus not in a position to discipline the responsible prosecutors.)  In addition, Plaintiff has agreed to substantially narrow the list to avoid duplication of discovery that the City provided in *Su v. City of New York*, 06-cv-00687 (RJD)(CLP) (E.D.N.Y.) (in fact, Plaintiff produced such records to Defendants), and to eliminate less relevant cases. Defendants have agreed to make production of a limited number of cases from 1999 to the present, but categorically refuse to make production regarding cases decided before 1999 even though Mr. Brown was D.A. As to the post-1999 cases that Defendants are refusing to produce, Defendant City contends such cases did not involve conduct sufficiently similar to the conduct in this case. A list of cases for which judicial resolution is required is attached as Ex. E. These are taken from Exhibit A to the Amended Complaint, using the original numbers, and include case summaries sufficient to enable the court to determine their relevancy.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Sanket J. Bulsara
September 10, 2018
Page 5

Defendants rely on *Connick v. Thompson*, 563 U.S. 51 (2011), in refusing to produce records for cases they deem insufficiently similar to this case. The Supreme Court held in *Connick* that a plaintiff bringing a *Monell* claim based upon inadequate *Brady* training has to show that the policymaker was on notice, based upon prior violations, of the need for training with respect to particular categories of disclosure. *Id.* at 61-62. The Court presumed that prosecutors, based upon their law school education and ethical rules, understand their *Brady* obligations, and declined to place on D.A.s the burden of training ADAs more broadly than necessary absent notice of specific deficiencies in knowledge. Even so, it defined "category" broadly, requiring, in a case involving failure to disclose blood-type evidence, prior notice of a need for training in disclosure of scientific evidence generally. *Id.* at 62-63. Meanwhile, the Court did not rule at all on the requisites of a failure-to-discipline claim or on the scope of discovery in such cases (*Connick* involved the sufficiency of evidence at a completed trial).

Plaintiff's claim here is not limited to failure to train, but includes the allegation that the Queens D.A., through his indifference to pervasive *Brady* violations, knowing use of false testimony, and improper summations, created an "anything-goes" atmosphere in which prosecutors knew that, to achieve the preeminent goal of winning convictions, they could commit such constitutional violations with impunity. This *de facto* policy of indifference and tolerance of violations was not limited to any narrow category of *Brady* violation or summation misconduct, but to misconduct generally that impacted a criminal defendant's constitutional right to a fair trial. Plaintiff's theory follows from *Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 1992) (upholding lawsuit on theory of "a practice of condoning perjury (evidence perhaps by a failure to discipline for perjury)" and a failure to discipline prosecutors for *Brady* violations generally); *Gentile v. County of Suffolk*, 926 F.2d 142, 153 (2d Cir. 1991) (authorities "consistently ignore[d] evidence of misconduct"); *Fiacco v. City of Rensselaer*, 783 F.2d 319, 330-32 (2d Cir. 1986) (history of "uninterested and superficial" responses to complaints "would have been viewed by the officers ... as reflecting an indifference"); and *Collins v. City of New York*, 923 F. Supp. 2d 462, 477 (E.D.N.Y. 2013) (Block, Senior D.J.) (permitting plaintiff to proceed under *Monell* theory that "despite scores of cases involving Brady violations and other prosecutorial misconduct," the Brooklyn D.A. had "never disciplined an assistant for such misconduct, even after the violations were confirmed by court decisions").

Numerous courts have distinguished between the theories of failure to train and failure to supervise or discipline. *See Amnesty America v. Town of West Hartford*, 361 F.3d 113, 127-32 (2d Cir. 2011) (Sotomayor, C.J.) (dismissing an inadequate police training claim while upholding a claim for inadequate supervision); *Cash v. Cty. of Erie*, 654 F.3d 324, 336 (2d Cir. 2011) (distinguishing the failure-to-train context, where "the 'nuance' of a particular training need may only become apparent…after a pattern of violations arises in substantially similar circumstances," from "the deliberate indifference concern … with the adequacy of defendants' own actions" to deter constitutional violations).

Indeed, rejecting the very argument that the Defendant City makes here, Judges Batts, in *Poventud v. City of New York*, No. 07 CIV. 3998 DAB, 2015 WL 1062186, at *16 (S.D.N.Y.

Mar. 9, 2015), reasoned: "Although Defendants contend that the Supreme Court's holding regarding the level of specificity required in a failure to train claim extends to failure to discipline claims, the two claims are 'distinct theories of ... deliberate indifference'" (quoting *Amnesty Am.,* 361 F.3d at 127 & n. 8).

In sum, Defendants may not rely on *Connick* to artificially narrow the categories of misconduct for which they must produce files. The cases for which they are refusing to produce discovery all are relevant to show that the D.A. was deliberately indifferent to the need to discipline prosecutors for their conduct denying criminal defendants their constitutional right to a fair trial through *Brady* and discovery violations, their knowing use, or failing to correct, false or misleading testimony or argument, and their summation misconduct calculated to mislead or inflame juries into convicting defendants on improper grounds.

Defendants should also not be permitted to categorically withhold files for cases predating 1999 (Plaintiff was arrested in 2009). Mr. Brown took office in 1991, so cases from 1991 onwards are relevant to show the unlawful customs, policies or practices he followed as the Queens D.A. and the anything-goes atmosphere of indifference he allowed to arise over many years. "When asserting a *Monell* claim, plaintiff is required to prove a pattern or practice, and therefore the dates of the incidents do not render the records less likely to lead to evidence admissible at trial." *Nunez v. City of New York*, No. 11 CIV. 5845 LTS JCF, 2013 WL 2149869, at *4 (S.D.N.Y. May 17, 2013) (internal quotation marks, brackets, and citations omitted). *See also Frails v. City of New York*, 236 F.R.D. 116, 118 (E.D.N.Y. 2006) (Reyes, M.J.) (rejecting ten-year limit to production of disciplinary records relating to *Monell* claim); *Younger v. City of New York*, No. 03CIV.8985(VM)(MHD), 2006 WL 1206489, at *1 (S.D.N.Y. May 2, 2006) (same).

Defendants should also be required to produce files for cases decided after Plaintiff's criminal trial in 2010. Such evidence is relevant, not to show notice, but to "shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right." *Bordanaro v. McLeod*, 871 F.2d 1151, 1166-67 (1st Cir. 1989). *See also Gentile v. County of Suffolk*, 926 F.2d 142, 151 (2d Cir. 1991) (post-incident ratification permits inference that unlawful policy existed at the time of the violation of the plaintiff's rights); *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) (same); *Henry v. County of Shasta*, 132 F.3d 512, 520 (9th Cir. 1997), *amended*, 137 F.3d 1372 (1998) ("failure even after being sued to correct a blatantly unconstitutional course of [conduct]..." is evidence of the prior policy); *Collins v. City of New York*, 923 F.Supp.2d 462, 477 (E.D.N.Y. 2013) (Block, Senior D.J.) (upholding the use of "after-the-fact events" to prove "a prior policy of acquiescence"). Moreover, the violation of Plaintiff's fair-trial rights, including under *Brady,* was a continuing one through at least his retrial in 2015.

The limited number of personnel files we seek production of is not unduly burdensome. The majority of the work was done in the *Su* case, under order of Judge Pollak (and over the

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Sanket J. Bulsara
September 10, 2018
Page 7

City's like opposition). The additional discovery we seek here is much more limited than what was produced in *Su*.

### Document Request #11 (*Monell:* QDAO Policies and Training Materials)

Plaintiff agreed to withdraw his request for subsection (d), and to forgo for now his requests for (f) and (g), and also explained to defense counsel more specifically, several weeks ago, what materials he was interested in with respect to the remaining categories. Rather than agree to *any* production, defense counsel has taken the position she needs until September 16 to make a decision after further consultation with her client. As of now, the parties thus disagree about the discovery demand. We therefore move to compel production, with the proviso that, should Defendants agree to comply, we can always withdraw that part of our motion.

This discovery is plainly relevant to Plaintiff's *Monell* claim—it would help establish the policies and training that did (or did not) exist concerning the categories of prosecutorial misconduct Plaintiff alleges occurred in his case. If no such materials exist, it would prove Plaintiff's claim that the D.A. was deliberately indifferent to violations of defendants' rights by failing to institute any policies, training, supervision, or disciplinary system to reasonably ensure compliance with constitutional requirements for fair trials. If such materials *do* exist, they would be important to demonstrate standards of behavior making the failure to discipline violations of such standards all the more egregious.

### Document Request #12 (Evidence of Discipline Defendants Intend to Use in Their Defense)

It is conceivable that there are instances of discipline other than in the cases listed in Exhibit A and known to Plaintiff. If the City intends to rely on any such instances in its defense, it should disclose all the relevant documents now, so that Plaintiff will have the opportunity to investigate them before any depositions occur. Defendants should not be allowed to delay this disclosure indefinitely, thereby delaying depositions or requiring repeating them. At the very least, disclosure of any instances of alleged discipline upon which the City may rely in its defense should occur at least 30 days before the scheduled deposition of District Attorney Brown or any other high-level official who will provide testimony about the issue of discipline, and the City should not be permitted to delay these depositions by delaying the requested disclosure. The City has had ample time, since Plaintiff's discovery request was served in May, to determine whether there are any such instances of discipline that it will (or may) rely upon in its defense.

### Deadline for Defendants to Comply With Disclosure

While Defendants' Motion to Dismiss was pending and discovery was delayed, this Court advised Defendants to gather the material so it could be promptly disclosed after the motion was decided. Plaintiff's demand was served in May—four months ago. Defendants can continue to gather the material while this motion is pending. They already have delayed this case nearly a year with a largely frivolous motion to dismiss that Judge Johnson denied in *every*

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Sanket J. Bulsara
September 10, 2018
Page 8

respect. They should not be allowed to stall the case more, especially since Plaintiff is not a young man. We request that Defendants be required to comply with the court's order by the deadline of October 19, 2018, or 20 days from the court's decision, whichever is later.

                                    Respectfully submitted,

                                    /s/

                                    Joel B. Rudin
                                    *Counsel for Plaintiff*

Encls.

cc:       Erin Ryan, Esq. (by ECF)
          Assistant Corporation Counsel
          *Counsel for Defendants*