17-CV-3827 (SJ)(SJB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RICARDO BENITEZ,

                                            Plaintiff,

-against-

THE CITY OF NEW YORK, RAUL LOPEZ, FRANK LIBRETTO, SERGEANT STAMM, AND TINA GRILLO,

                                            Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO BIFURCATE DISCOVERY AND TRIAL

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Erin Teresa Ryan*
*Tel: (212) 356-5056*

**PRELIMINARY STATEMENT**

Plaintiff filed his amended complaint on October 13, 2017 naming defendants City of New York, Raul Lopez, Frank Libretto, Brian Stamm and Tina Grillo (hereinafter "defendants") alleging claims of Denial of the Right to Fair Trial and Malicious Prosecution against the individual defendants, and Municipal Liability under Monell against the City of New York, based on the purported actions of the Queens County District Attorney's Office ("QCDA"). Since June 2018, the parties have engaged in both fact and Monell discovery. Defense counsel were under the impression that majority of paper discovery was completed, and that only limited fact discovery and Monell depositions remained. However, on June 4 and June 21, 2019, plaintiff served his Third and Fourth Discovery Demands on defendants in an attempt to massively broaden the scope of Monell discovery.

Given the scope and burden of the remaining Monell discovery now in this matter, in order to conserve the resources of the Court and the parties, and to resolve this case as quickly and efficiently as possible, for the reasons stated herein defendants respectfully request that the Court bifurcate plaintiff's Monell claim for the purposes of remaining discovery, motion practice and trial.

**ARGUMENT**

**PLAINTIFF'S CLAIMS AGAINST THE CITY SHOULD BE BIFURCATED FROM HIS UNDERLYING CLAIMS OF A CONSTITUTIONAL VIOLATION**

Plaintiff brings a claim pursuant to Monell v. Dep't of Social Services, 436 U.S. 658, 694-95 (1978) against the City of New York alleging that the actions of the prosecutors in plaintiff's criminal case violated his civil rights; that the QCDA was aware of a pattern of similar misconduct and was deliberately indifferent; and that the QCDA did not properly train their

employees to avoid these errors from occurring. For the reasons set forth herein, these claims should be bifurcated at this point in discovery from the claims alleging an underlying violation of plaintiff's Constitutional rights.

When a case features divergent standards of proof, courts have broad discretion under Rule 42(b) of the Federal Rules of Civil Procedure to bifurcate separate issues or claims "in furtherance of convenience, to avoid prejudice, or to expedite and economize…" Fed. R. Civ. P. 42(b); see also Busch v. City of New York, 00-CV-5211 (SJ), 2002 U.S. Dist. LEXIS 18337, 2002 WL 31051589, at *2 (E.D.N.Y. Sept. 9, 2002). To prevail on a motion for bifurcation, a party need only establish the presence of one Rule 42(b) factor. Amato v. City of Saratoga Springs, 972 F. Supp. 120, 124 (N.D.N.Y. 1997), aff'd, 170 F.3d 311 (2d Cir. 1999); West v. City of New York, 1996 U.S. Dist. LEXIS 6239, at *15-16 (S.D.N.Y. May 8, 1996) (citing Ismail v. Cohen, 706 F. Supp. 243, 251 (S.D.N.Y. 1989), aff'd, 899 F.2d 183 (2d Cir. 1990). The instant action warrants separate trials because all three factors set forth in Rule 42(b) favor bifurcation. See Ricciuti v. New York City Transit Auth., 796 F. Supp. 84, 86 (S.D.N.Y. 1992) (granting motion for bifurcation when defendants demonstrated the presence of all three conditions). Bifurcation is especially crucial in § 1983 cases involving claims against municipalities and individual employee defendants due to unique proof issues.

A. The Standard of Proof Pertaining to a Monell Claim

To establish the liability of a municipal defendant, a plaintiff must demonstrate (1) that he suffered a constitutional violation and 2) that the constitutional harm he suffered was the result of a municipal policy or custom. Monell v. Dep't of Social Services, 436 U.S. 658, 694-95 (1978). If a plaintiff fails to prove a constitutional violation in his lawsuit against an

individual defendant, the corresponding cause of action against the municipality will be mooted. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

Moreover, even if plaintiff establishes an underlying Constitutional violation, without further evidence of a municipal custom, policy or practice, he cannot establish Monell liability. Because the resolution of claims regarding the underlying violations might render trial of the Monell claim unnecessary, the courts in this Circuit almost uniformly hold that bifurcation is the appropriate course of action.

> The overwhelming weight of authority [from District Courts in this Circuit] holds that since the City's liability is derivative of individual defendants' liability and since the proof required to establish a Monell claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to try the Monell claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established.

Morales v. Irizarry et. al., 95-CV-5068 (AGS)(HBP), 1996 U.S. Dist. LEXIS 15613, at *3-4 (S.D.N.Y. Oct. 17, 1996); see also Amato v. City of Saratoga Springs, 170 F.3d 311 (2d Cir. 1999); Padilla v. City of New York, 92-CV-1212 (MBM), 1993 U.S. Dist. LEXIS 17 (S.D.N.Y. 1993); Vichare v. AMBAC, Inc., 106 F.3d 457, 466 (2d Cir. 1996); Williams v. City of New York, 07-CV-5362 (NG)(VVP), 2008 U.S. Dist. LEXIS 104730, at *8 (E.D.N.Y. Dec. 29, 2008) ("[B]ifurcation of civil rights trials is a common practice in the courts in this circuit"); Mineo v. City of New York, 09-CV-2261 (RRM)(MDG), 2013 U.S. Dist. LEXIS 46953, 2013 WL 1334322, at *1 (E.D.N.Y. Mar. 29, 2013) (Second Circuit courts generally "favor bifurcating Monell claims").

Courts must also preliminarily consider whether the issues are triable by jury, the posture of discovery, and whether the party opposing bifurcation will be prejudiced if separate trials are ordered. Xerox Corp. v. Nashua Corp., 57 F.R.D. 25, 26 (S.D.N.Y. 1972). Here,

moving forward with the limited remaining fact discovery and a motion for summary judgment on the alleged underlying Constitutional violation will not prejudice plaintiff, as his requested Monell discovery shares no overlap with the discovery necessary to complete a motion for summary judgment on the underlying claims. Plaintiff's Monell discovery has focused on QCDA training materials, personnel files, and disciplinary measures against specific Assistant District Attorneys ("ADA's") not involved in this case going back into the 1980s – in short, nothing that will be useful for plaintiff in opposing a motion for summary judgment on the allegations that his Constitutional rights were violated.

Courts in this Circuit generally bifurcate Monell claims in § 1983 cases, and those claims do not proceed unless and until the plaintiff prevails on his underlying Constitutional claims. See e.g., Cordero v. City of New York, 15-CV-3436 (JBW), 282 F. Supp. 3d 549, 557-558 (E.D.N.Y. 2017); Brown v. City of New York, 13-CV-6912 (TPG), 2016 U.S. Dist. LEXIS 18670, at *4 (S.D.N.Y. Feb. 19, 2016); Tabor v. New York City, 11-CV-0195 (FB), 2012 U.S. Dist. LEXIS 29004, at * 31 (E.D.N.Y. Feb. 23, 2012); Jones v. City of New York, 10-CV-5387 (BMC), 2011 U.S. Dist LEXIS 31561, at *2-3 (E.D.N.Y. Mar. 27, 2011); Duke v. County of Nassau, 97-CV-1495 (JS)(ETB), 2000 U.S. Dist LEXIS 22415, at *2-3 (E.D.N.Y. Oct. 26, 2000).

Bifurcating the Monell claim will limit juror confusion and potential prejudice towards the individual defendants. Bifurcation will also advance speedy resolution of this action and the efficient conservation of the parties' time and resources. Second Circuit Courts have consistently held that bifurcation is appropriate where the resolution of a single issue may resolve a case rendering trial of other issues unnecessary, Ismail, 706 F. Supp. at 250–52, or where the issues are distinct, involve different types of proof, and separate trials will not result in

4

substantial overlap of evidence. Katsaros v. Cody, 744 F.2d 270, 278 (2d Cir.), cert. denied, Cody v. Donovan, 469 U.S. 1072 (1984).

**B.     Bifurcation is Necessary for Swift and Efficient Resolution of Plaintiff's Claims**

Considerations of efficiency and convenience weigh strongly in favor of bifurcating the Monell claim for purposes of any remaining discovery and trial. The parties have been conducting discovery on this matter for over a year, including Monell discovery. The parties have produced over 28,000 pages of discovery over the past year, which includes documents related to plaintiff's underlying case, disciplinary documents for the individual NYPD defendants, and personnel files for 43 different ADA's relating to plaintiff's Exhibit A, annexed to plaintiff's Amended Complaint. It appeared that discovery was entering its final stage, with only a few factual depositions left to complete, and the parties were conferring on the scope of Monell depositions. It was defendants' understanding that the parties would soon be ready to start dispositive motion practice.

However, on June 4, 2019 and June 21, 2019, plaintiff served his Third and Fourth Discovery Demands on defendants requesting the identification and personnel files for an additional 225 cases and ADA's covering the years 2000 to present, with the promise of additional requests to follow for the years 1991-2000.[1] Although plaintiff later withdrew his

---

[1] These cases newly identified by plaintiff are not even reversals, but cases where the Appellate Department affirmed the underlying conviction, and allegedly made a comment about the prosecutor's behavior during the underlying case. Plaintiff claims that these comments during oral argument should be seen to put QCDA on notice regarding potential prosecutorial misconduct. However, defendants contend that without a finding of prosecutorial misconduct, this evidence is not sufficiently limited in time or scope and does not meet the proportionality requirements under Fed. R. Civ. P. 26. Additionally, if plaintiff has identified these cases as affirmations with comments made during oral arguments, then it appears that plaintiff already has access to the transcripts and the identification and personnel files for the individual ADA's is unnecessary, if, as plaintiff claims, the mere fact that a comment was made was enough to prove notice to QCDA.

5

request for the personnel files, and limited the requests, for now, to only encompass interrogatories asking for the identity of the ADA's involved, plaintiff reserved his right to reassert the request for personnel files at a later date. Indeed, defendants anticipate that, if those 225 ADA's had been identified to plaintiff, a request for personnel files would follow shortly thereafter.

These new requests, and the continued requests plaintiff has informed counsel they intend to serve if permitted, falls far afield of the proportionality requirement for discovery under the Federal Rules of Civil Procedure. Plaintiff's original request for the identification of ADA's and their personnel files was for 118 cases, which was later limited to 43, mostly because plaintiff already had the personnel files from a previous litigation. The personnel documents for those 43 ADA's accounts for over 6,300 pages of documents. It was months of work for QCDA and defendants' counsel to obtain the requisite files from storage, review for sensitive and personal information, and appropriately redact before producing to plaintiff. It is no small task, particularly for QCDA who has a limited staff to work on these matters. To allow plaintiff, now, at this late stage in discovery, to request information and documents about 225 more ADA's, on cases that are not factually or even procedurally similar to plaintiff's, is not proportionate to the needs of the case, and would only serve to harass and burden defendants while adding little to no value to plaintiff's case.

To the extent that defendants believed that discovery would be limited by only producing the names, the parties could have potentially reached an agreement. However, give plaintiff's extensive discovery requests in the past, and plaintiff's insistence on reserving his right to seek those personnel files, it is clear that once the names of the ADA's are in plaintiff's possession, further document requests will follow. While defendants will seek to strike these

6

requests on their merits, if this motion is not granted, it is defendants' position that since factual discovery is nearly complete, the best course of action is to avoid this potentially needless fight at this time, and move forward to seek a resolution of the underlying claims.

The parties are in agreement that fact discovery is nearly complete, with only three potential depositions left to conduct. Bifurcation at this stage will conserve resources until a jury clearly determines that plaintiff did indeed suffer an underlying Constitutional violation, thus deeming it necessary for the parties to expend additional effort and resources litigating the Monell claims. This conservative approach is particularly apt in § 1983 cases against municipalities due to onerous proof requirements. The trial court in Padilla highlighted key reasons why exercising caution is critically important in such cases.

> [T]he issue of municipal liability engages matters going well beyond whether plaintiff's [rights were violated by the individual defendant on the date alleged]. Moreover, it is possible that if the case is tried only on the issue of individual defendant liability, there may be no need to consider the issue of municipal liability regardless of the outcome of such a trial. If the verdict is in favor of the individual defendants, that ends the case; if the verdict is in favor of plaintiff, the City has a substantial incentive to settle the case. The case will be tried more quickly if discovery and trial are so limited.

Padilla, 1993 U.S. Dist. LEXIS 17, at *3 (S.D.N.Y. Jan. 4, 1993).

Additionally, when faced with a plaintiff making "burdensome and time consuming requests" at a late stage in discovery, this Court found bifurcation to be appropriate. Walker v. City of N.Y., No. 14-CV-680 (WFK) (PK), 2018 U.S. Dist. LEXIS 58380, at *13 (E.D.N.Y. Mar. 30, 2018) ("Given the late stage of discovery, the burden posed by Plaintiff's expansive requests with respect to the Monell claim, and the clear authority in this Circuit to bifurcate Monell claims from the underlying constitutional claims, this Court concurs with Judge Kuo's ruling that bifurcation, at least for discovery purposes, is appropriate.").

7

Defendants submit that continuing concurrent discovery on the Monell claims and the claims against the individual defendants will greatly lengthen the time it will take to complete discovery, pushing off a potential resolution by years. It will also substantially burden this Court and the parties, potentially unnecessarily. A motion and/or a trial on the claims against the individual defendants will require a limited, manageable amount of proof and time. In contrast, to establish Monell liability, plaintiff must prove a pattern of conduct by adducing evidence of a considerably greater frequency of culpable incidents. See West, 1996 U.S. Dist. LEXIS 6239 at *16 (ordering bifurcation of claims and noting that "plaintiffs' Monell claims will require extensive evidence concerning the City's policies on the use of force that is largely irrelevant to plaintiffs' claims against the individual defendants"). Bifurcation could also protect against the possibility of a needlessly prolonged trial by enhancing swift resolution of the matter because the City may choose to settle if a jury finds any of the individual defendants liable. Conversely, forcing the parties to continue in countless more months of discovery on a potentially futile Monell claim would prolong plaintiff's case and potential resolution needlessly. For these reasons, the interests of convenience and economy warrant bifurcation of plaintiff's Monell claim at this time.

C.   **Bifurcation is Necessary to Avoid Prejudice and Juror Confusion**

The risk of prejudice and juror confusion also weighs strongly in favor of bifurcation. Defendants in cases that involve Monell claims face the substantial risk of unfair prejudice because the jury has to sift through distinct material facts and understand different standards of proof for each claim. Ismail, 706 F. Supp. at 251 (S.D.N.Y. 1989) ("there is a danger that evidence admissible on the issues relating to conduct by the City or [the individual officers] will "contaminate" the mind of the finder of fact in its consideration of the liability of

the other defendant"); see also Fisher v. City of New York, 1992 U.S. Dist. LEXIS 3436 (S.D.N.Y. Mar. 20, 1992); Busch, 2002 U.S. Dist. LEXIS 18337, at *9; Amato, 972 F. Supp. At 124. Bifurcation limits jury confusion and ensures fair adjudication of each claim. Mineo, 2013 U.S. Dist. LEXIS 46953, at *4.

Here, plaintiff brings disparate claims against the individual defendants and the City. The individual defendants in this matter are three NYPD officers who were involved in plaintiff's arrest and identification, and the Assistant District Attorney who was present at plaintiff's lineup. Against these defendants, plaintiff brings claims of Malicious Prosecution and Fabrication of Evidence. As against the City, plaintiff alleges that the prosecutors involved in plaintiff's criminal trial violated his Constitutional rights by failing to turn over Brady material, presenting false or misleading arguments during summation, and that the QCDA was deliberately indifferent and failed to properly train their ADA's on these subjects. In support of this Monell claim, plaintiff has sought discovery on QCDA training, disciplinary procedures, and documents regarding actions taken by QCDA after specific reversals or Court findings of prosecutorial misconduct.

Putting aside the lack of causation between the underlying constitutional violation alleged by plaintiff, in which plaintiff alleges the individual defendants fabricated evidence which led to him being identified by an eyewitness, it would not be possible for these individual defendants to avoid prejudice based on the evidence plaintiff would likely seek to elicit in support of his Monell claim. Plaintiff's Monell claim is based, in part, on purported incidents of misconduct in other trials conducted by the QCDA. However, none of the ADA's involved in plaintiff's case are the individuals who purportedly committed those alleged violations in the cases that he claims support his Monell claim. A combined trial would only

9

serve to confuse the jurors on what claims they are required to decide, and will result in multiple "mini-trials" on other alleged instances of misconduct. No limiting instruction will be able prevent that bias or prejudice.

## CONCLUSION

For the foregoing reasons, Defendants City of New York, Raul Lopez, Frank Libretto, Brian Stamm and Tina Grillo respectfully request that the Court bifurcate plaintiff's Monell claims at this time, to allow the parties to move forward with motion practice and trial on plaintiff's claims involving his alleged underlying Constitutional violations.

Dated:    New York, New York
          July 15, 2019

                              ZACHARY W. CARTER
                              Corporation Counsel of the
                                City of New York
                              *Attorney for Defendants*
                              100 Church Street, Room 3-203A
                              New York, New York 10007
                              (212) 356-5056

By:          /s/

                              Erin Teresa Ryan
                              Assistant Corporation Counsel
                              Special Federal Litigation Division

CC:    Joel Rudin, Esq.  (By ECF)
         Haran Tae, Esq.
         *Attorney for Plaintiff*