# Law Offices of Joel B. Rudin, P.C.

CARNEGIE HALL TOWER
152 WEST 57TH STREET
EIGHTH FLOOR
NEW YORK, NEW YORK 10019

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@rudinlaw.com

JOEL B. RUDIN

HARAN TAE
JACOB "COBY" LOUP

GEORGE R. GOLTZER
(OF COUNSEL)

October 28, 2019

**By ECF**
Honorable Sanket J. Bulsara
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   *Benitez v. City of New York, et al.*
              <u>Dkt. No. 17-cv-03827 (SJ)(SJB)</u>

Dear Judge Bulsara:

     I write on behalf of Plaintiff for an Order compelling Defendant City of New York to comply with Plaintiff's Fifth Set of Requests for the Production of Documents and, consistent with the Court's Order dated August 25, 2019, to produce Queens County Assistant District Attorney Deborah Pomodore for a deposition no later than November 30, 2019. The parties have conferred to no avail. We seek prompt disclosure of the requested discovery because it directly relates to upcoming *Monell* depositions of Acting D.A. John M. Ryan and other executives beginning November 5.

## Relevant Factual Background

     This lawsuit alleges individual, investigative misconduct by two detectives and a Queens County ADA (not Ms. Pomodore) in manufacturing false identification evidence at a lineup; it also seeks to hold the City of New York liable for *Brady* and other fair trial violations which also were a substantial cause of Plaintiff's wrongful conviction. It is relative to this *Monell* claim that we seek the documents, which relate to the Office's response to *Brady*-violation allegations and findings in 2012-13 concerning the prosecution of another criminal defendant, Petros Bedi.

     Plaintiff's Amended Complaint alleges that the misconduct for which the City is liable includes Queens County prosecutors' withholding of *Brady* material, influencing a witness to give false testimony, failing to correct false testimony, presenting plainly inadmissible hearsay testimony at trial in violation of Plaintiff's Confrontation Clause and Fair Trial rights, and making

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Sanket J. Bulsara
October 28, 2019
Page 2

false or misleading argument during summation.  It alleges this conduct was proximately caused by the D.A.'s Office's deliberate indifference to such misconduct through its failure to adequately train, supervise and discipline its employees in such areas.

In particular, the evidence obtained in discovery so far shows that the Office was deliberately indifferent to *Brady* compliance by utterly failing to establish, or train prosecutors in, any information management system regarding *Brady* material.  Prosecutors were not trained to make, and in fact were discouraged from making, records of such information and from searching it out. Meanwhile, they were evaluated on their success in winning convictions, but virtually never disciplined or evaluated for violating the fair trial rights of the defendants they prosecuted.  As a result, trial prosecutors would either deliberately, recklessly, negligently, or ignorantly fail to disclose impeachment and exculpatory information that *Brady* required them to disclose.  The evidence in this case shows that *Brady* material was withheld either deliberately or due to the absence of any information management system.

The records that Plaintiff seeks from the *Bedi* prosecution are likely to support Plaintiff's *Monell* theory.  In that case, prosecuted by ADA Pomodore, Bedi, in 2012, 12 years after his conviction, obtained portions of the witness security file of one of two eyewitnesses, Seraphim Koumpouras.  In his trial testimony, Koumpouras claimed he had been assisted in relocating by D.A.'s detective-investigators because he feared defendant Bedi, but he falsely denied that the Office had paid any of his expenses.  ADA Pomodore not only failed to correct his false testimony but argued in summation he had been completely honest and had no motive or interest to lie.  The undisclosed records showed that, contrary to being in fear, he initially had refused any relocation.  Then, they showed, in addition to receiving thousands of dollars in housing payments on his behalf, he signed 16 cash receipts acknowledging personal receipt of approximately $3,000 in cash.

On August 13, 2012, Bedi filed a 440 motion seeking to vacate his conviction.  Before doing so, his counsel handed the motion to the D.A.'s Office to review, but it decided to resist the motion.  The Office's papers, prepared in part by District Attorney Brown's chief counsel, Robert J. Masters, defended Pomodore on the basis that, due to the Office's practice of walling off witness security records from trial prosecutors, she did not have *actual knowledge* of the records' contents.  On March 13, 2013, the court vacated the conviction on the basis that Pomodore had violated her constitutional obligation to find out and disclose impeachment information in her *Office's* possession and to correct her witness's false testimony.

Earlier this year, in *Bellamy v. City of New York,* No. 12-cv-1025 (E.D.N.Y.) (AMD)(PK), the plaintiff asked for permission to file a motion to compel the City to disclose emails between Pomodore and the prosecutors who prepared the D.A.'s opposition papers in order to determine what was known or discussed about her knowledge and actions in the Bedi trial.  Such information was relevant, the plaintiff contended, to prove his theory in that case that the Office had a deliberate policy of walling off witness security information so that it would not be adequately disclosed at trial.  *See Bellamy*, No. 12-cv-1025 (E.D.N.Y.) (AMD)(PK), Parties' Joint Status Letter dated May

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Sanket J. Bulsara
October 28, 2019
Page 3

8, 2019, ECF No. 221, at 7.  The City opposed the plaintiff's request on the basis, *inter alia,* that the D.A.'s Office had "acknowledged" that Pomodore had not received all the Koumpouras information and records and thus Bellamy already had all he needed to prove his theory.  *See id.*, ECF No. 221, at 8-9.  At oral argument on May 14, the court accepted the City's view.  *See id.*, 5/14/19 H. Tr. 22-23.  In its written order, the court denied Bellamy's request to file a formal motion to compel but gave him "leave to renew upon a showing that there is a substantial need for such discovery."  *Id.*, Minute Entry dated May 14, 2019.

Thereafter, in response to a different discovery request, the City disclosed a handful of heavily redacted e-mails and notes to Bellamy's counsel pertaining to Bedi which are marked "Confidential" under a protective order in that case.  These materials appeared to have been prepared following the Office's receipt of the draft 440 motion and in reaction to coverage of the motion's filing in the news media.[1]

On September 10, 2019, Benitez served upon the defendants a Fifth Set of Requests for the Production of Documents, all pertaining to the Bedi case.  Benitez sought disclosure of all memoranda, e-mails and correspondence by and between Pomodore, the Office's chief executives, and Jennifer Hagan, the appeals attorney who, along with Masters, prepared the Office's opposition to Bedi's 440 motion, from May 1, 2012 (when Bedi's counsel provided a pre-filing copy of the motion) through September 30, 2013, which was about six weeks after the motion was granted; all witness security records for the two witnesses, Koumpouras and James Mirtsos[2]; all statements by Pomodore concerning her knowledge of witness security expenditures on behalf of such witnesses; statements by Albert Vilardi (former chief of the witness security program), concerning his knowledge of such expenditures and any interactions he had with the two witnesses; all protective orders, and applications therefor, signed by the court allowing the People to withhold any information about the two witnesses from the defense, and all material witness applications and warrants in connection with the Bedi prosecution.  For a variety of reasons, addressed below, the City opposed the Fifth Set of Document Requests in its entirety.  A copy of Plaintiff's discovery demand is attached as Exhibit A, and Defendants' response is attached as Exhibit B.

Earlier this month, the parties to this case, and to two other *Monell* cases involving the Queens D.A.'s Office, *Bellamy* and *Taylor v. City of New York, et al.,* 18-CV-5500 (NG)(ST), agreed to a joint *Monell* deposition and discovery plan under which certain depositions will be taken jointly for purposes of all three cases and all *Monell* document discovery will be shared. This stipulation was submitted for the Court's approval on October 25, 2019. *See* ECF No. 87-1. Under this stipulation, the parties, anticipating this motion, agreed: "[N]othing … precludes a party from presenting to an appropriate judge an argument that such issue is not definitively resolved or

---

[1] Undersigned counsel at the time of this disclosure was "of counsel" to Bellamy's attorneys of record, and has since formally appeared, along with Emery, Celli, Brinckerhoff & Abady, as one of Bellamy's attorneys of record.  The undersigned also represented Bedi.
[2] Plaintiff inadvertently omitted Koumpouras from this particular request but Defendants have agreed to deem the request to encompass his records as well as any of Mirtsos.

Law Offices of Joel B. Rudin, P.C.

Hon. Sanket J. Bulsara
October 28, 2019
Page 4

that the facts or the claims in a particular case distinguish the ruling made by Judge Kuo [in the *Bellamy* case]." *Id.,* ¶ 4.

The undersigned also represents the plaintiff in the *Taylor* case. The requested *Bedi* records are relevant to the plaintiff's theory there as well. Plaintiff there contends that the trial prosecutor deliberately withheld some impeachment material and recklessly failed to obtain other impeachment material in other files in the Office she knew existed, because, as in the *Benitez* case, she had been encouraged to win at all costs, had no fear of disciplinary consequences, and did not search out *Brady* material in Office files possessed by other prosecutors.

## Argument

Defendants object wholesale to Plaintiff's fifth discovery demand. They argue that the *Bedi*-related records are not relevant or proportional to the needs of this litigation, where Benitez's case does not involve suppression of witness security benefits, the D.A.'s Office has already acknowledged that Pomodore did not know about the witness security benefits, and Plaintiff's counsel has access to the limited disclosures concerning witness security made in *Bellamy*. Defendants also argue *res judicata* and work product and deliberative process privileges.

The four requirements of *res judicata* include: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the parties had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (internal quotation marks and citation omitted).

Defendants have failed to meet any, let alone all, of the four requirements. First, Plaintiff Benitez was, and is not, a party to the *Bellamy* litigation. Nor may Defendants argue that Benitez, although a nonparty, should nonetheless be precluded because of his similar interests to Bellamy, or because they now share the same counsel. There is no broad "virtual representation" exception to the general rule against extending the preclusive effect of a judgment to a nonparty, *see Taylor v. Sturgell*, 553 U.S. 880, 904 (2008), and the showing of parallel interests or even the use of the same attorney in both suits is not a sufficient basis for preclusion, *Algie v. RCA Glob. Commc'ns, Inc.*, 891 F. Supp. 839, 853–54 (S.D.N.Y. 1994), *aff'd*, 60 F.3d 956 (2d Cir. 1995). Moreover, here, undersigned counsel was a mere consultant to Bellamy at the time the *Bedi* issue was litigated and did not handle that motion.

Neither has Plaintiff Benitez been given a full and fair opportunity to litigate his entitlement *in his case* to the *Bedi* materials. The *Bedi* materials are highly relevant to this case for various reasons that were not submitted to Judge Kuo or ruled upon by her when the issue, with no briefing by the plaintiff, was decided in *Bellamy* after a short oral argument. Benitez does allege in his complaint, as does Bellamy, that the Office had a practice of walling off impeachment material concerning witnesses from trial prosecutors. He alleges such a practice was so brazenly

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Sanket J. Bulsara
October 28, 2019
Page 5

unconstitutional that it communicated to prosecutors the Office's attitude of deliberate indifference to *Brady* violations. However, Benitez's *Monell* theory is much more comprehensive than that.

Benitez's Amended Complaint alleges that the D.A. and his executives were deliberately indifferent to *Brady* and related fair trial violations and communicated that all that really mattered was winning. They deliberately failed to adopt recordkeeping policies and practices that would reasonably bring about *Brady* disclosure, failed to investigate or discipline prosecutors who committed such violations, and meanwhile rewarded prosecutors for winning. In this case, the Office's practice not to keep records caused the highly foreseeable result that the grand jury assistant would not know that the lineup had been so suggestive that the identification was totally unreliable and could not serve as the basis for the indictment. It further resulted in the subsequent ignorance of the hearing and trial prosecutors about *Brady* material, thereby making it impossible for them to even consider whether to disclose it to the defense. The failure to properly supervise, investigate and discipline prosecutors concerning their *Brady* and fair trial obligations further encouraged the various prosecutors who were involved in this case to be indifferent to their obligations to record, find out about, and disclose such information and, relatedly, to refrain from offering and to fail to correct false or misleading evidence and argument.

Moreover, the time frame, subject matter, authors, and recipients of the e-mails requested here somewhat overlap with, but are broader than those requested in *Bellamy*. *Compare* Ex. C (e-mail search parameters sent by Plaintiff's counsel to defense counsel), *with Bellamy v. City of New York*, No. 12-cv- 1025 (E.D.N.Y.) (AMD)(PK), ECF No. 221-1, ¶ 15. Plaintiff specifically seeks all witness security records for Koumpouras (the entire file was not disclosed in *Bedi*) and any such records for Mirtsos (none were disclosed at all). He seeks all relevant statements by Pomodore and the head of witness security, Albert Velardi. And he seeks any material witness applications and orders which would be relevant to the witnesses' credibility if they refused to cooperate and had to be arrested before they appeared in court.

Lastly, Judge Kuo's ruling was not a "final judgment." Discovery orders are interlocutory in nature. *See Hardy v. Knapp*, 27 F. App'x 24, 26 (2d Cir. 2001). Moreover, Judge Kuo denied the *Bellamy* motion without prejudice, and with leave to renew, which necessarily indicates that her decision was not final. *Accord In re Greenwald*, 48 B.R. 263, 270 (S.D.N.Y. 1984) ("A dismissal without prejudice is not a final determination on the merits of a claim" and is insufficient for the purposes of *res judicata*).

The work product privilege, as codified in Fed. R. Civ. P. 26(b)(3), does not apply here. The party asserting the privilege must establish its requisite elements. *See, e.g., U.S. v. Construction Products Research, Inc.*, 73 F.3d 464 (2d Cir. 1996). Defendants must show that "the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation." *Id.* (citations omitted). The burden is a heavy one, and the privilege is recognized "only to the very limited extent that…excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel*

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Sanket J. Bulsara
October 28, 2019
Page 6

*v. United States*, 445 U.S. 40, 50 (1980).  Furthermore, the work product privilege is not absolute, and work product can be produced upon a showing that the party seeking discovery has a substantial need for the materials and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  Fed. R. Civ. P. 26(b)(3)(A)(ii).

Here, Defendants have provided no privilege log, as required by Fed. R. Civ. P. 26(b)(5).  They simply repeat the same boilerplate objection for all six document requests.  They thus make it impossible to credit or evaluate their claim with regard to individual documents.

Second, the work product privilege does not apply to materials prepared by a nonparty, *even if* the material was created in contemplation of that nonparty's own pending or anticipated litigation, because the privilege, as codified in Rule 26(b)(3), was intended to preserve the "competitive balance between the litigants, a concern not directly implicated by discovery from a non-party."  See *Ramsey v. NYP Holdings, Inc.*, No. 00 CIV.3478(VM)(MHD), 2002 WL 1402055, at *6-7 (S.D.N.Y. June 27, 2002) (collecting cases).  This principle has been applied to a nonparty District Attorney's Office for records sought in § 1983 litigation.  *See, e.g.*, *Howell v. City of New York*, No. CV06-6347(ERK)(VVP), 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007) (Pohorelsky, M.J.); *Abdell v. City of New York*, No. 05 CIV. 8453 KMK JCF, 2006 WL 2664313, at *3 (S.D.N.Y. Sept. 14, 2006).

Third, where the central issue in this litigation is the executives' investigation into the allegations of prosecutorial misconduct and their state of mind is itself in dispute, the material sought is *factual* and the work product privilege does not apply.  Moreover, much of the material concerns the Office's formulation of a public response to negative news media coverage, and thus was not prepared for the primary or exclusive purpose of assisting in anticipated or pending litigation.  Even if some of the requested information is characterized solely as opinion or legal strategy, Plaintiff has a substantial need for the materials.  They are the best evidence of policymakers' candid thinking and thus of their state of mind.  The upcoming *Monell* depositions are not a sufficient alternative.  The events occurred many years ago, the deponents may lack full memory, and they are motivated to give self-serving testimony that the documents may contradict.

Nor does deliberative process privilege apply.  As discussed above, in the context of *this* case, where the state of mind is a factual issue, much of the requested information is "purely factual."  *MacNamara v. City of New York*, 249 F.R.D. 70, 89 (S.D.N.Y.2008).  Second, the deliberative process privilege does not protect deliberative communications that were "part of a routine and ongoing process" to determine whether there had been compliance with existing procedures and whether disciplinary action was warranted, *see, e.g.*, *Charles v. City of New York*, No. 11-CV-0980 KAM JO, 2011 WL 5838478, at *1 (E.D.N.Y. Nov. 18, 2011) (Orenstein, M.J.).  Third, "Where [as here] the decision-making process itself is the subject of the litigation, the deliberative privilege may not be raised as a bar against disclosure of critical information."  *Burka v. New York City Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986) (citations omitted) (text in brackets added); *see also, e.g.*, *Marisol A. v. Giuliani*, No. 95 Civ. 10533(RJW), 1998 WL 132810,

LAW OFFICES OF JOEL B. RUDIN, P.C.

Hon. Sanket J. Bulsara
October 28, 2019
Page 7

\*7 (S.D.N.Y. Mar. 23, 1998) ("The mental process, which are normally privileged … may also be discoverable where there are allegations of misconduct or misbehavior."). In particular, "[i]n a civil rights action where the deliberative process of State or local officials is itself genuinely in dispute, privileges designed to shield that process from public scrutiny must yield to the overriding public policies expressed in the civil rights laws." *Grossman v. Schwarz*, 125 F.R.D. 376, 381 (S.D.N.Y. 1989).

Here, Plaintiff Benitez is entitled to challenge the Office's unsubstantiated position in the *Bedi* litigation, and the City's "admission" in *Bellamy*, that Pomodore did not have actual knowledge of the contents of the witness security files. Suspiciously, Pomodore provided no affidavit in Bedi and has resisted being deposed in this case for a year. Rather than constitute an "admission," the D.A.'s position in Bedi that she lacked actual knowledge was asserted to protect her against a finding that might lead to discipline by the court's Grievance Committee; it was self-serving. Moreover, Plaintiff is entitled to find out whether her failure to disclose resulted from indifference, wilfulness, recklessness, or negligence, and relatedly whether executives conscientiously investigated this issue with an eye towards disciplining her for her constitutional violations, were indifferent themselves, or, worse still, endorsed and ratified her misbehavior.

Lastly, Defendants have made no showing that disclosure would be burdensome or oppressive. As to e-mails under Document Request No. 1, Plaintiff provided defense counsel with a list of narrow search parameters (*see* Ex. C). We have asked defense counsel to have the documents ready to produce following this Court's decision and in time for the upcoming depositions. We request such disclosure within three days of the court's decision.

As for ADA Pomodore's deposition, the City has agreed to produce Pomodore but has stated she will not appear on the noticed date of November 20 (which Plaintiff scheduled in the beginning of September), and, despite our numerous requests, has not provided any alternative dates—Plaintiff has been trying to take her deposition for nearly a year. Should Defendants agree to a mutually convenient date for Pomodore's deposition before this motion is decided, Plaintiff will withdraw this portion of his motion.

Respectfully submitted,

/s/
Joel B. Rudin
*Counsel for Plaintiff*

cc: Erin T. Ryan, Esq. (by ECF)
Richard Bahrenburg, Esq. (by ECF)
Assistants Corporation Counsel
*Counsel for Defendants*